IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT COURT OF CALIFORNIA


BARBARA MCGARVEY,

                 Plaintiff,                    No. 2:13-cv-01099-KJM-EFB

     vs.

JP MORGAN CHASE BANK, N.A.,

                 Defendant.               <u>ORDER</u>

_____/


        This matter is before the court on defendant's motion to dismiss (ECF 11), which the court has decided without a hearing.  Plaintiff brings a putative class action alleging violations of law in the mortgage loan modification process.  For the reasons below, defendant's motion is GRANTED in part and DENIED in part.

I.      <u>ALLEGED FACTS AND PROCEDURAL HISTORY</u>

        In August 2004, plaintiff inherited her parent's home as the successor trustee of her parent's trust.  (Def.'s Notice of Removal, Ex. A, Compl. ¶¶ 33–36, ECF 1.)  Plaintiff's mother, Berdine Sylvia, had purchased the home, located at 1209 Zinfandel Drive in Roseville, California, in April 2004 so that plaintiff could live with her as her caretaker.  (*Id.* ¶ 34.)  Plaintiff contributed $80,000 towards the down payment, but Berdine was the sole borrower on the Home Equity Line of Credit loan (the "Loan") that financed the purchase of the home.  (*Id.*)

When in July 2004 Berdine quitclaimed the home and transferred ownership to herself and plaintiff as trustees of the Sylvia Trust, plaintiff and her mother provided Washington Mutual, the Loan servicer at that time, with all of the information about the transfer of title.  (*Id.* ¶ 35.) Washington Mutual sent plaintiff a letter recognizing and approving the transfer of the property.  (*Id.*)  In August 2004, when Berdine passed away, plaintiff informed Washington Mutual of her death and again sent them the trust papers and other documentation.  (*Id.* ¶ 36.)

Plaintiff made timely payments on the Loan from 2004 until 2009.  (*Id.* ¶ 37.) On October 22, 2009, plaintiff received a notice, addressed to "Berdine Sylvia/Trustee C/O Barbara McGarvey," notifying her that defendant JPMorgan Chase had purchased Washington Mutual's assets and was now the loan servicer.  (*Id.* ¶ 38.)  In late 2009, plaintiff began to fall behind on her mortgage payments.  (*Id.* ¶ 40.)  She applied for loan modifications and attempted to apply for loan assumption several times throughout 2010 and 2011; at every turn she was stymied by defendant, who told her she must take additional steps to qualify for modification and assumption.  (*Id.* ¶¶ 40, 41.)  When plaintiff complied with defendant's directions and completed these additional steps, defendant continued to deny her applications, eventually telling her she could not modify because she was not the "borrower" on the Loan. (*Id.* ¶ 42.)

Defendant treated plaintiff as the borrower for some purposes but not others. (*Id.* ¶ 43.)  In July 2011, for example, defendant sent plaintiff multiple letters soliciting a modification application; these letters were addressed to "Berdine Sylvia c/o Barbara McGarvey, Trustee."  (*Id.*)  Then, in September 2011, defendant recorded a notice of default on the loan; in its declaration accompanying that notice, defendant listed Sylvia Berdine as the "borrower" and represented that it had contacted "the borrower" to "discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure in compliance with Cal. Civ. Code Section 2923.5," even though Berdine had died seven years prior.  (*Id.*) While treating plaintiff as the borrower for purposes of foreclosure, defendant intermittently refused to communicate with plaintiff for any other purpose because she was not the borrower. (*Id.*)

Plaintiff eventually entered into a trial loan modification with defendant, which defendant terminated, despite plaintiff's compliance with its terms, because she was not eligible as a non-borrower. (*Id.* ¶¶ 46–55.) Plaintiff avers that, had she known from the beginning that modification or assumption were not feasible options, she would have pursued other possibilities and would not have spent thousands of dollars on loan payments, fees, and legal assistance. (*Id.* ¶¶ 44, 45, 59.) Defendant sold the home to a third party at a foreclosure sale on January 20, 2013. (*Id.* ¶ 56.)

Plaintiff filed suit in state court on April 15, 2013, seeking to represent a class of "widows and orphans" who, among other things, own legal title to residential real property but are not "borrowers" on the loans that encumber the property. (*Id.* ¶¶ 65–67.) Plaintiff pursues three claims: (1) promissory estoppel; (2) negligence; and (3) unfair competition under California Business and Professions Code section 17200. Defendant removed the matter to this court on June 3, 2013 (Def.'s Notice of Removal, ECF 1) and filed the instant motion to dismiss on July 8, 2013 (ECF 11). Plaintiff filed an opposition on August 2, 2013 (ECF 13), and defendant replied on August 9, 2013 (ECF 15). Along with the instant motion, defendant has also submitted a request for judicial notice of certain documents, such as portions of the Loan agreement and some of the loan modification letters plaintiff alleges she received from defendant. (ECF 12.) Because the court is able to give full consideration to defendant's arguments in the instant motion without needing to reference these documents, the court denies defendant's request for judicial notice as moot.

II.     STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Although a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), in order to survive a

motion to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action . . . .'" *Id.* (quoting *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In making this context-specific evaluation, this court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  This rule does not apply to "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986), *quoted in Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to judicial notice," or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A court's consideration of documents attached to a complaint or incorporated by reference or matter of judicial notice will not convert a motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).

III.    ANALYSIS

Defendant asserts that each of plaintiff's three claims—promissory estoppel, negligence, and unfair competition—must be dismissed as a matter of law.  The court addresses each claim in turn, ultimately concluding that plaintiff states claims for negligence and unfair competition but not for promissory estoppel.

/////

/////

4

A.     Promissory Estoppel

"The elements of a promissory estoppel claim are (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance."  *U.S. Ecology, Inc. v. State*, 129 Cal. App. 4th 887, 901 (2005) (alteration in original; internal quotations and citation omitted).  Here, defendant argues plaintiff's promissory estoppel claim must be dismissed because plaintiff cannot allege facts sufficient to satisfy the first and fourth prongs.  (ECF 11 at 7.)  Because the court finds below that plaintiff's allegations are insufficient to satisfy the first prong, the court does not reach the fourth prong.

Defendant contends that plaintiff has not identified a clear and unambiguous promise that she would be treated as the borrower for purposes of loan modification.  (ECF 11 at 7.)  Defendant reads plaintiff's complaint to assert three bases upon which she asserts her promissory estoppel claim: (1) modification offer letters sent from defendant to plaintiff's home; (2) the language of the loan modification agreement; and (3) the fact that defendant agreed to a trial loan modification with plaintiff.  (*Id.*)

Defendant argues none of these three bases satisfies the first prong of a promissory estoppel claim.  First, none of the letters defendant sent to plaintiff's home were addressed to plaintiff; rather, these letters made clear defendant was attempting to communicate with the borrower, as evidenced by the fact they were addressed to plaintiff's mother, the borrower on the loan.  (*Id.*)  Second, the loan modification agreement states that plaintiff's mother is the borrower.  (*Id.*)  Plaintiff's own actions demonstrate she understood this: she attempted to sign her mother's name to the agreement in her "defunct capacity of power of attorney."  (*Id.*)  Third, a servicer's entering into a trial modification does not equate to a promise to offer a permanent loan modification.  (*Id.* at 8 (citing *Dooms v. Fed. Home Loan Mortg. Corp.*, No. CV F 11–0352 LJO DLB, 2011 WL 1232989, at \*10 (E.D. Cal. Mar. 31, 2011)).)

/////

5

1    Plaintiff counters that the complaint alleges defendant made clear and

2 unambiguous promises to plaintiff and others similarly situated to treat them as the borrowers

3 for purposes of "loss mitigation." (ECF 13 at 5.) These promises were made, while knowing

4 the original borrower was deceased, by (1) soliciting and processing applications to modify the

5 loan secured by plaintiff's home; (2) offering a trial modification; and (3) collecting trial

6 modification payments. (*Id.*)

7    The court finds plaintiff's alleged facts do not support a claim that defendant

8 made plaintiff, as the owner of the home that secured the Loan, a clear and unambiguous

9 promise to treat her as the borrower for purposes of modifying the Loan. Instead, plaintiff's

10 alleged facts demonstrate that defendant's conduct sent mixed messages, the opposite of

11 unambiguous. Plaintiff informed her loan servicer of her mother's death at least three times: in

12 2004, April 2011, and June 2012. (Compl. ¶¶ 36, 41, 49.) After being informed of this fact,

13 defendant sent plaintiff multiple letters soliciting a modification; however, these letters were

14 addressed not to plaintiff but to "Berdine Sylvia c/o [plaintiff], Trustee." (*Id.* ¶ 43.)

15    Plaintiff's own actions show she understood defendant did not make a clear and

16 unambiguous promise to treat her as the borrower. In June 2012, plaintiff received a

17 modification offer addressed to Berdine Sylvia c/o plaintiff. (*Id.* ¶¶ 46, 101.) Plaintiff signed

18 the modification papers "Berdine Sylvia, by Barbara McGarvey POA," and returned them

19 along with her first modification payment. (*Id.* ¶ 48.) In response, defendant sent plaintiff a

20 letter in late June 2012 indicating at least one borrower's signature was missing, for which the

21 application may be denied. (*Id.* ¶ 49.)

22    Plaintiff has submitted as supplemental authority a recent decision by another

23 judge of this court, permitting a promissory estoppel claim to proceed based upon a theory of

24 good faith. (ECF 19 (citing *Alimena v. Vericrest Fin., Inc.*, __ F. Supp. 3d __, No. CIV. S-12-

25 0901 LKK, 2013 WL 4049663, at *14 (E.D. Cal. Aug. 9, 2013)).) In *Alimena*, the court found

26 the plaintiffs adequately pled that the mortgagee made a "clear and unambiguous" promise to

27 consider in good faith their application for loan modification because the mortgagee "was

28 required to comply with HAMP guidelines in considering Plaintiffs' application." *Id.* The

6

1    plaintiffs in that case explicitly pled, among other things, that "[p]ursuant to the First TPP,

2    Plaintiffs and their loan were to be evaluated in good faith and in accordance with HAMP

3    guidelines." *Id.*

4          In contrast, plaintiff's instant allegations are insufficient to show that defendant

5    was obligated to consider in good faith her application for loan modification when plaintiff

6    alleges she was the owner of the house that secured the Loan, not the borrower.  Plaintiff

7    alleges only that HAMP[1] and other mortgage measures "reflect a trend of requiring lenders and

8    mortgage servicers to deal reasonably, accurately, and honestly with borrowers in default in a

9    good faith effort to arrive at a workable loan modification or other foreclosure alternative."  (*Id.*

10   ¶¶ 18, 23.)  Plaintiff's allegations expressly admit she is not the borrower on the Loan.  (*See id.*

11   ¶ 1.)  That said, in light of *Alimena*, plaintiff may be able to plead facts to show defendant was

12   obligated to consider her applications in good faith even knowing she was not the borrower.

13          Plaintiff's claim for promissory estoppel is dismissed without prejudice.

14      B.     Negligence

15          The elements of negligence are "duty, breach of duty, causation, and damages."

16   *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 48 Cal. 3d 583, 588 (1989).

17            Liability for negligent conduct may only be imposed where there

18            is a duty of care owed by the defendant to the plaintiff or to a

               class of which the plaintiff is a member.  A duty of care may

19            arise through statute or by contract.  Alternatively, a duty may be

20            premised upon the general character of the activity in which the

               defendant engaged, the relationship between the parties or even

21

22        [1] "HAMP," which stands for "Home Affordable Modification Program," is described as
follows: "'The United States Department of the Treasury and other federal agencies created

23   HAMP pursuant to authority granted by the Emergency Economic Stabilization Act, title 12
United States Code section 5201 et seq.  Mortgage servicers may voluntarily participate in

24   HAMP.  Treasury guidelines set forth threshold criteria to define the class of eligible

25   borrowers.  The guidelines also set forth accounting steps using a standardized net present
value test to determine whether it is more profitable to modify the loan or allow it to proceed to

26   foreclosure.  Calculations under HAMP involve assigning values to certain variables that are
largely within the servicers' discretion, thus precluding any entitlement to loan modifications.'"

27   *Alimena*, 2013 WL 4049663, at *1 n.2) (quoting *Nungaray v. Litton Loan Servicing, LP*, 200

28   Cal.App.4th 1499, 1501 n.1 (2011)).

the interdependent nature of human society.  Whether a duty is owed is simply a shorthand way of phrasing what is the essential question—whether the plaintiff's interests are entitled to legal protection against the defendant's conduct.

*J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 803 (1979) (internal quotations and citations omitted).

Criteria for determining whether a defendant owes a plaintiff a duty of care, identified here as the *Biakanja* factors, include: "(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct and (6) the policy of preventing future harm."  *Id.* at 804 (citing *Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958)); *see also Marlene F.*, 48 Cal. 3d at 588 ("'Whether a defendant owes a duty of care is a question of law.  Its existence depends upon the foreseeability of the risk and upon a weighing of policy consideration for and against imposition of liability.'" (quoting *Slaughter v. Legal Process & Courier Serv.*, 162 Cal. App. 3d 1236 (1984))).

Defendant asserts plaintiff's negligence claim is not viable because defendant cannot, as a matter of law, owe plaintiff a legal duty.  (ECF 11 at 11.)  Defendant argues that a financial institution, as a general rule, owes no duty of care to a borrower when that institution does not act as more than a mere lender of money.  (*Id.* (citing *Nymark v. Heart Fed. Savings & Loan Ass'n*, 231 Cal. App. 3d 1089, 1096 (1991).)  Imposing a duty on servicers in connection with loan modifications would be inconsistent with *Nymark*, defendant contends, because "'lending and modification are so intertwined to constitute typical lending activities and [ ] holding loan servicers to a higher standard would defeat modification goals by discouraging loan servicers to entertain modification to avoid foreclosure.'"  (*Id.* at 12 (quoting *Juarez v. Suntrust Mortg.*, No. CV F 13–0485 LJO SAB, 2013 WL 1983111, at *12 (E.D. Cal. May 13,

8

2013)).)  Defendant additionally asserts it has no duty to adequately inform and assist survivors in assuming loans following the death of a borrower because plaintiff does not allege these activities are outside of typical lending activities; in fact, the numerous statutes, regulations, and policies plaintiff cites in her complaint, which govern lenders' interactions with survivors, show that defendant's interactions with plaintiff fall within the scope of a bank's conventional role as a lender of money.  (*Id.*)

Plaintiff argues there is a presumption of the existence of a duty owed by defendant in California, that *Nymark* does not categorically preclude a duty of care, and that the *Biakanja* factors do not support departing from the presumption of the existence of a duty. (ECF 13 at 12–14 (citing *Garcia v. Ocwen Loan Servicing, LLC*, No. C 10–0290 PVT, 2010 WL 1881098 (N.D. Cal. May 10, 2010)).)

Plaintiff has pled facts sufficient to demonstrate defendant owed her a duty of care.  Plaintiff alleges defendant, the servicer of the Loan secured by the home plaintiff inherited from her mother, continued to send plaintiff loan modification offers even after learning plaintiff's mother, the original borrower, was deceased.  (Compl. ¶¶ 38–52.)  Plaintiff alleges defendant, after much dallying, eventually rejected her modification application solely because she is not listed as a borrower on the loan.  (*Id.* ¶ 55.)  In these circumstances, it is entirely foreseeable that plaintiff, the owner of the home, would attempt to take advantage of defendant's loan modification offers in order to stave off foreclosure and that plaintiff would suffer damages as a result of defendant's unnecessary delays.  *See J'Aire Corp.*, 24 Cal. 3d at 803; *see also Garcia*, 2010 WL 1881098, at *4 ("The California legislature has determined that a person who undertakes an activity owes a duty to others to exercise ordinary care or skill. Here, by asking Plaintiff to submit supporting documentation, Defendant undertook the activity of processing Plaintiff's loan modification request.  Having undertaken that task, it owed Plaintiff a duty to exercise ordinary care in carrying out the task." (alterations, internal citations, and quotations omitted)).  The sum of the *Biakanja* factors also supports finding a duty here.  *See Garcia*, 2010 WL 1881098, at *3 (addressing each factor in a similar loan modification situation and concluding they weigh in favor of finding a duty of care).

9

1        *Nymark*'s rule, that a defendant bank owes no duty of care when that

2 defendant's interactions with a plaintiff fall within the scope of a bank's conventional role as a

3 lender of money, does not apply here.  In *Nymark*, the plaintiff alleged the defendant's

4 appraisal of his residence, undertaken as part of the defendant's loan process, was negligent

5 because the plaintiff relied upon the appraisal's inaccurate conclusion that the residence

6 contained no serious construction defects.  231 Cal. App. 3d at 1093.  In holding that the

7 defendant owed the plaintiff no duty of care, the court reasoned that "defendant performed the

8 appraisal of plaintiff's property in the usual course and scope of its loan processing procedures

9 to protect defendant's interest by satisfying it that the property provided adequate security for

10 the loan."  *Id.* at 1096.  Defendant did not conduct the appraisal to induce plaintiff to enter into

11 the loan transaction; rather, defendant was simply "acting in its conventional role as a lender of

12 money to ascertain the sufficiency of the collateral as security for the loan."  *Id.* at 1096–97.

13        Here, defendant repeatedly affirms throughout its briefing on the instant motion

14 that it is not a lender of money vis-à-vis plaintiff.  Defendant is not acting in its conventional

15 role by offering to a non-borrower loan modifications that defendant's own policies apparently

16 do not permit it to honor.  Such conduct is fundamentally different from conducting an

17 appraisal of a property before agreeing to fund that property's purchase.  Defendant owes

18 plaintiff and those in similar circumstances a duty to exercise ordinary care in the loan

19 modification process.

20        Plaintiff's second claim for negligence may proceed.

21     C.     Unfair Competition

22        California's Unfair Competition Law ("UCL") prohibits "any unlawful, unfair

23 or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

24 Cal. Bus. & Prof. Code § 17200.  An act violates the UCL if it is "unlawful," "unfair" or

25 "fraudulent."  *Rubio v. Capitol One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010).  Plaintiff's

26 third claim alleges violations under each of these three prongs.

27        Defendant contends plaintiff does not have standing under the UCL, does not

28 state a claim under any of the three UCL prongs, and cannot seek injunctive relief to reverse the

10

foreclosure because she does not plead the ability to tender.  (ECF 11 at 13.)  The court

addresses each of these arguments in turn.

             1.       Standing

        Defendant argues plaintiff lacks standing because she has not demonstrated a

causal connection between her lost money and property and defendant's conduct.  (*Id.* (citing

*Rubio*, 613 F.3d at 1204–05).)  Plaintiff cannot demonstrate causation, defendant asserts,

because she is not and has never been the borrower on the Loan and therefore is not personally

liable for any balances, charges, or other fees.  (*Id.* (citing *Cornelison v. Kornbluth*, 15 Cal. 3d

590, 596–97 (1975)).)  Moreover, plaintiff did not become liable for any fees incurred during

the time defendant "forestalled exercising its contractual right to foreclose" on the Loan,

defendant argues.  (*Id.*)

        Plaintiff counters that she has pled she paid defendant thousands of dollars for

which she was not personally liable.  (ECF 13 at 16.)  She also pled she paid a law firm $5,000

to help her submit a loan modification application in reliance on defendant's promise to review

her for modification.  (*Id.* (citing *Rubio*, 613 F.3d at 1204).)  Finally, plaintiff argues that

"[e]ven putative class members who did not pay money suffered financial injury as the debt

secured by their homes rose."  (*Id.* (citing *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305,

1346 (2009)).)

        To assert a UCL claim, a plaintiff must have "'suffered injury in fact and

. . . lost money or property as a result of the unfair competition.'"  *Rubio*, 613 F.3d at 1203–04

(quoting Cal. Bus. & Prof. Code § 17204 (alteration in original)).  There must be a causal

connection between the defendant's alleged UCL violation and the plaintiff's injury in fact.  *Id.*

        Plaintiff has alleged sufficient facts to demonstrate causation.  For example,

plaintiff alleges that defendant's "failure to process [her] for assumption simultaneously with

its processing of her multiple modification applications, its refusal to treat her as a borrower,

even after placing her in a trial modification and its conduct in foreclosing without giving her a

genuine opportunity to modify" constitute unfair business practices.  (Compl. ¶ 58.)  As a result

11

1    of these allegedly unfair practices, plaintiff claims she paid defendant thousands of dollars for

2    which she was not personally liable.  (*See, e.g.*, Compl. ¶¶ 40, 48, 50.)

3              Moreover, defendant's cited cases do not support its arguments.  In *Rubio*, as

4    here, the plaintiff's allegation that she suffered loss of money or property as a result of the

5    defendant's unfair business practices, which were specifically described, was sufficient for her

6    UCL claim to survive a motion to dismiss.  613 F.3d at 1204.  *Cornelison* is inapposite; there

7    the court granted the defendant summary judgment on the plaintiff's breach of contract claim

8    because the plaintiff was not in privity with the defendant and therefore was not liable on the

9    loan.  15 Cal. 3d at 596–97.  Plaintiff brings a UCL claim, not a breach of contract claim, and

10   therefore *Rubio* controls.

11             Plaintiff has standing to pursue her UCL claims.

12             2.      Unlawful Prong

13             Defendant argues plaintiff does not state a claim under the unlawful prong of the

14   UCL because plaintiff has not successfully alleged a predicate violation of law.  (ECF 11 at 14

15   (citing *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) ("By

16   proscribing any unlawful business practice, section 17200 borrows violations of other laws and

17   treats them as unlawful practices that the unfair competition law makes independently

18   actionable.").)  In other words, defendant contends that because plaintiff has not stated claims

19   for promissory estoppel or negligence, plaintiff cannot base her unlawful UCL claim on these

20   violations of law.  Having found plaintiff has not stated a promissory estoppel claim, the court

21   addresses only negligence here.

22             Courts in California appear divided on whether common law claims such as

23   negligence can serve as the predicate violation of law under the UCL unlawful prong.

24   *Compare Abels v. Bank of Am.*, No. C 11-0208 PJH, 2011 WL 1362074, at *4 (N.D. Cal.

25   Apr. 11, 2011) (an act is unlawful if it "violates an underlying state or federal statute or

26   common law" including negligence) *and Osei v. Countrywide Home Loans*, 692 F. Supp. 2d

27   1240, 1254 (E.D. Cal. 2010) (same) *with Stearns v. Select Comfort Retail Corp.*, 763 F. Supp.

28   2d 1128, 1150 (N.D. Cal. 2010) (negligence claims "may not constitute predicate acts for a

12

UCL claim") *and Joe Hand Promotions, Inc. v. Alvarado*, No. 1:10-CV-00907 LJO, 2011 WL 1544501, at *7 (E.D. Cal. Apr. 21, 2011), *report and recommendation adopted*, 2011 WL 1773296 (E.D. Cal. May 9, 2011) (same).  But the court need not resolve this tension here: defendant does not argue in its motion that negligence cannot serve as the predicate violation of law, asserting instead that plaintiff does not state a viable negligence claim.

Because the court has found plaintiff states a viable negligence claim, plaintiff's UCL claim based on unlawfulness may proceed.

### 3.      Unfair and Fraudulent Prongs

To state a claim under the UCL's unfairness prong, a plaintiff must show either (1) "a practice that undermines a legislatively declared policy or threatens competition," or (2) "a practice that has an impact on its alleged victim that outweighs the reasons, justifications, and motives of the alleged wrongdoer." *Busalacchi v. Ariz. Pub. Serv. Co.*, No. 12-CV-00298-H-RBB, 2012 WL 3069948, at *5 (S.D. Cal. July 27, 2012) (citing *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 736 (9th Cir. 2007)).  "Unfair behavior is that which is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Id.* (quoting *Bardin v. Daimlerchrysler Corp.*, 136 Cal. App. 4th 1255, 1260 (2006)).

The fraudulent prong of the UCL is "governed by the reasonable consumer test: a plaintiff may demonstrate a violation by show[ing] that [reasonable] members of the public are likely to be deceived." *Rubio*, 613 F.3d at 1204 (quotations and citations omitted; original alterations).  Claims under this prong are subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Whether a business practice is deceptive will usually be a question of fact not appropriate for decision on a motion to dismiss. *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008).

Defendant contends plaintiff bases her claim under the unfair prong on two allegations, neither of which is sustainable.  (ECF 11 at 15.)  First, plaintiff's allegation that defendant refused to communicate with her about assumption or modification options is contradicted by numerous allegations in the complaint.  (*Id.*)  Second, plaintiff's allegation that

1    defendant treated her as the borrower when accepting her loan payments, but not when

2    considering her for loan modification, misapprehends the law and facts.  (*Id.* at 16.)  Under

3    applicable law, lenders may not enforce standard mortgage clauses that require immediate

4    repayment of the loan when property securing the loan is transferred to a family member via an

5    *inter vivos* trust.  (*Id.* (citing the Garn-St. Germain Act,12 U.S.C. § 170lj-3(d)).)  Therefore,

6    defendant had no choice but to accept the payments, while plaintiff had several options,

7    including letting defendant foreclose, that she chose not to pursue.  (*Id.*)

8            Defendant also argues plaintiff's allegations under the fraud prong do not meet

9    Rule 9(b)'s heightened pleading standard.  (*Id.* at 17.)

10           Plaintiff responds that defendant's refusal to communicate with her was

11   intermittent but nevertheless unfair.  (ECF 13 at 17 (citing Compl. ¶¶ 42, 43, 52).)  Plaintiff

12   also asserts that her unfairness claim regarding defendant's acceptance of loan payments is

13   predicated on more than mere acceptance of payments; it also is predicated on the allegation

14   that defendant did not consider her for assumption simultaneously with its processing of her

15   multiple modification applications and did not give her a genuine opportunity to modify before

16   foreclosure.  (*Id.* at 18 (citing Compl. ¶ 58).)

17           Plaintiff additionally asserts she has pled her fraud claim sufficiently to satisfy

18   Rule 9(b).  (*Id.* at 19.)

19           Plaintiff's allegations are sufficient to state a claim under the unfair prong

20   because they describe conduct that is "immoral, unethical, oppressive, unscrupulous or

21   substantially injurious to consumers."  *Busalacchi*, 2012 WL 3069948, at *5.  Plaintiff

22   informed defendant of her mother's death at least twice: in April 2011 and June 2012.  (Compl.

23   ¶¶ 41, 49.)  After being informed of this fact, defendant alternately refused to communicate

24   with plaintiff and sent her multiple letters soliciting a modification addressed to "Berdine

25   Sylvia c/o [plaintiff], Trustee."  (*Id.* ¶ 43.)  More troubling still, in September 2011, defendant

26   recorded a notice of default on the loan; in its accompanying declaration, defendant listed

27   Sylvia Berdine as the "borrower" and represented that it had contacted "the borrower" to

28   "discuss the borrower's financial situation and to explore options for the borrower to avoid

foreclosure in compliance with Cal. Civ. Code Section 2923.5," even though Sylvia Berdine died in 2004.  (*Id.*)

Having been notified that the borrower on the Loan was deceased, defendant continued to send plaintiff loan modification offers and accepted plaintiff's loan modification payments.  In June 2012, plaintiff received a modification offer addressed to Berdine Sylvia c/o McGarvey.  (*Id.* ¶¶ 46, 101.)  It offered to reduce her principal balance by over $86,000, to forbear from charging interest on over $24,000 of the remaining balance, and to reduce her monthly payment to $675.06 per month for the first five years of the modification.  (*Id.* ¶ 46.) Trial modification payments were to be made in July, August and September 2012.  (*Id.* ¶ 47.) Plaintiff signed these modification papers "Berdine Sylvia, by Barbara McGarvey POA" and returned them along with her first modification payment.  (*Id.* ¶ 48.)  Defendant sent her a letter in late June 2012 indicating at least one borrower's signature was missing, for which the application might be denied.  (*Id.* ¶ 49.)  Plaintiff again sent defendant her mother's death certificate.  (*Id.*)  Plaintiff then timely made, and defendant accepted, the final two trial modification payments for August and September 2012.  (*Id.* ¶ 50.)  Defendant eventually denied plaintiff's loan modification application because she was not the borrower.  (*Id.* ¶ 42.) Defendant's conduct, as alleged, "has an impact on its alleged victim that outweighs the reasons, justifications, and motives of the alleged wrongdoer."  *Busalacchi*, 2012 WL 3069948, at *5.

Based upon these same facts, plaintiff also states a claim under the fraudulent prong: a reasonable consumer in plaintiff's position would be deceived by defendant's mixed-messages into believing she could qualify for and receive a loan modification or that defendant could afford her some other relief.  *See Rubio*, 613 F.3d at 1204.  Plaintiff pleads with sufficient particularity to satisfy Rule 9(b), in alleging that she received the additional modification offer from defendant in June 2012 after informing defendant in April 2011 that her mother, the borrower on the loan, was deceased.  (Compl. ¶¶ 41, 46–50.)  *See Kearns*, 567 F.3d at 1125.

/////

4.      Tender Requirement

Because plaintiff seeks "an Order requiring the Defendants rescind the trustee sale or otherwise restore title to Plaintiff," (Compl. ¶ 104), defendant asserts plaintiff must offer to tender the full amount due on the Loan.  (ECF 11 at 18 (citing *Nugent v. Fed. Home Loan Mortg. Corp.*, 2013 WL 1326425, at *7 (E.D. Cal. March 29, 2013)).)  Plaintiff counters she need not allege tender because she is not arguing there were irregularities in the foreclosure process.  (ECF 13 at 20 (citing *Ohlendorf v. Am. Home Mortg. Servicing*, 279 F.R.D. 575, 580 (E.D. Cal. 2010)).)

Based upon the current complaint, plaintiff is not required to allege tender. Tender is required only when foreclosure has already occurred and the plaintiff alleges irregularities in the foreclosure process itself.  *Ohlendorf*, 279 F.R.D. at 580; *see also Nugent*, 2013 WL 1326425, at *7 (tender is required when plaintiff brings a wrongful foreclosure claim).  Here, while the subject home has already been sold at a trustee's sale and plaintiff seeks to regain title (Compl. ¶¶ 56, 104), plaintiff's promissory estoppel, negligence and UCL claims do not rely on any irregularities in the foreclosure process.

IV.    CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is GRANTED in part and DENIED in part.  Plaintiff must file an amended complaint within twenty-one days of the date of this order.

IT IS SO ORDERED.

DATED:  October 10, 2013.

_____
UNITED STATES DISTRICT JUDGE