ARNOLD & PORTER, LLP
PETER OBSTLER (171623 )
peter.obtler@aporter.com
MARJORY GENTRY (240887)
marjory.gentry@aporter.com
Three Embarcadero Center, Tenth Floor
San Francisco, California 94111-4024
Telephone:  415.471.3100
Facsimile:  415.471.3400

Attorneys for Defendant
JPMORGAN CHASE BANK, N.A.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARBARA McGARVEY<br><br>An individual, and all others similarly situated,<br><br>    Plaintiff,<br><br>   v.<br><br>JPMORGAN CHASE; and DOES 1 through 100 inclusive.<br><br>    Defendant. | Case No. 2:13-cv-1099-KJM-EFB<br><br>**ANSWER TO FIRST AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>1. Negligence, California Civil Code §1714<br><br>2. Unfair Business Practices, California Business and Professions Code §17200<br><br>DEMAND FOR JURY TRIAL |

Defendant  JPMorgan Chase Bank, N.A. ("Chase") respectfully answers the First Amended Complaint[1] of Plaintiff Barbara McGarvey ("Plaintiff") as follows:

<strong>NATURE OF THE CASE</strong>

**1.     Plaintiff Barbara McGarvey, on her own behalf and on behalf of a class of individuals similarly situated, brings this action to halt Defendant JPMorgan Chase's ("Chase") widespread unfair, unlawful and negligent conduct in servicing and collecting on home loans when the original borrower on the note has passed away.  In such circumstances, Defendant routinely misleads homeowners, lies about the remedies available, accepts payments but otherwise refuses to even deal with the homeowner/heirs.**

Paragraph 1 sets forth Plaintiff's characterizations of the First Amended Complaint, which do not require a response.  To the extent a response is required, Chase denies that Plaintiff's action may be brought, or maintained, as a class action.  Chase denies that any of the requirements for class certification have, or will be, met in this case.  Chase denies each and every remaining allegation in Paragraph 1.

**2.     When Ms. McGarvey's mother passed away in 2004, Ms. McGarvey inherited the Roseville, California home where they lived.  Title was held in a living trust and Ms. McGarvey was the trustee after her mother passed.  She faithfully paid the property taxes, insurance, and made payments on the loan, which Chase accepted, for over five years. After she experienced financial hardship and fell behind on the mortgage in 2009, Ms. McGarvey applied for a loan modification.  Although Chase knew that the original borrower, Ms. McGarvey's mother, was no longer alive, Chase did not advise Ms. McGarvey that its policy was to not deal with heirs, even where the heir was the trustee in a living trust in which title to the property was held.  Rather, Chase considered Ms. McGarvey's multiple mortgage modification applications and accepted partial payments from her without telling her explicitly that Chase would never actually modify the loan because it was still in her mother's name.  Had Chase informed Ms. McGarvey it would not modify, she would have**

---

[1] The First Amended Complaint contained some typographical errors with respect to paragraph numbering.  In its answer, Chase corrected those errors and the numbering is standardized across the entire complaint.

**taken other steps, such as selling the home or filing for bankruptcy, that could have allowed her to avoid foreclosure.  Instead, Chase unfairly used the prospect of a loan modification to string Ms. McGarvey along and collect default-related fees and additional payments on a loan Ms. McGarvey knew she could no longer afford.  Chase's conduct was outrageous— sometimes refusing to speak to her at all, sometimes actively soliciting her for a modification. Chase even placed Ms. McGarvey in a trial loan modification, accepting three monthly payments from her before finally stating it would never modify the loan, and foreclosing on her home.**

Chase admits, on information and belief, that Berdine Sylvia passed away in 2004.  Chase lacks knowledge or information sufficient to form a belief to admit or deny who lived in the house located at 1209 Zinfandel Drive, Roseville, CA 95747 in 2004 or at anytime thereafter, and on that basis denies those allegations.  Chase lacks knowledge or information sufficient to form a belief to admit or deny the manner in which title on 1209 Zinfandel Drive, Roseville, CA 95747 was held following the death of Berdine Sylvia, and on that basis denies those allegations.  Chase admits that Washington Mutual Bank ("Washington Mutual") and/or Chase received payments on a loan secured by 1209 Zinfandel Drive, Roseville, CA 95747 from 2004 until 2009.   Chase lacks knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiff's allegations that she made the property taxes, insurance, and loan payments, and on that basis denies those allegations.  Chase admits that Washington Mutual was advised in 2004 that Berdine Sylvia had passed away.  Chase denies that it has a policy "not to deal with" individuals who inherit property that has been used as collateral securing loans that Chase services.  Chase denies that it mislead Plaintiff concerning its policies or procedures.   Chase admits that Plaintiff submitted multiple mortgage modification applications to Chase in connection with a loan made to Berdine Sylvia and secured by real property located at 1209 Zinfandel Drive, Roseville, CA 95747 and that Chase accepted monies paid towards Ms. Sylvia's loan while these modification applications were pending.   Chase denies that it failed to inform Plaintiff that Chase would not modify Berdine Sylvia's loan at Plaintiff's request because Plaintiff was not a borrower on the loan.  Chase lacks knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiff's

1   allegations regarding the other steps that she would have taken to avoid foreclosure, and on that

2   basis denies those allegations.   Chase admits that it foreclosed on the property located at 1209

3   Zinfandel Drive, Roseville, CA 95747.   Chase admits that before it would share information about

4   Berdine Sylvia's loan with Plaintiff, Chase required documentation from Plaintiff establishing that

5   she was legally entitled to receive information concerning the loan.   Chase denies that it solicited

6   Plaintiff to apply for a modification of Berdine Sylvia's loan.   Chase denies that it placed Plaintiff

7   into a trial loan modification.   Except as expressly admitted, Chase denies the allegations in

8   Paragraph 2.

9         **3.**      **As set out more fully below, Chase's handing of Ms. McGarvey's requests for**

10   **modification, in the face of its blanket refusal to modify for inheriting non-borrowers, is**

11   **emblematic and typical of its handling of loss mitigation for heirs on title but not on the loan.**

12   **Chase's conduct constitutes actionable negligence and an unfair business practice, in violation**

13   **of California's Unfair Competition Law.**

14         The second sentence of Paragraph 3 makes or avers legal conclusions to which no response

15   is required.   To the extent a response is required, Chase denies each and every allegation in the

16   second sentence of Paragraph 3.   Chase denies each and every remaining allegation in Paragraph 3.

17         **4.**      **Chase's practice of soliciting loan modification when it never intends to allow**

18   **the loss mitigation it has offered, harms homeowners.   While homeowners like Ms. McGarvey**

19   **pursue loss mitigation in reliance on Chase's conduct, their unpaid balance rises, default fees**

20   **pile up, and they lose other means of resolving their default in another manner.   As a result of**

21   **Chase's unlawful conduct, Ms. McGarvey sustained serious harm, including the loss of her**

22   **home, accumulation of default fees and interest charges and concomitant loss of equity,**

23   **monetary damages.**

24         Chase denies each and every allegation in Paragraph 4.

25         **5.**      **With this suit, Barbara McGarvey seeks declaratory and injunctive relief on**

26   **behalf of herself and a class of similarly situated homeowners.   She seeks an Order requiring**

27   **Chase to communicate with successors in interest on title when the original borrower has**

28   **passed away and to provide accurate information regarding a survivor's opportunity for loss**

**mitigation.  She seeks a court order providing appropriate relief for class members who were negligently or unfairly solicited for modification, whose applications were processed, and/or who were offered a trial plan and whose trial plan payments were accepted when Chase had no intent to modify: that the Court order Chase to in fact evaluate them for foreclosure prevention alternatives as if they were borrowers, and if they otherwise qualify, to allow modification, or other appropriate relief.  She also seeks compensatory damages on behalf of herself and the class for Chase's outrageous conduct of treating heirs like borrowers when it takes their money, but refusing to follow through on the loss mitigation that could save their homes.**

Paragraph 5 sets forth Plaintiff's characterizations of the First Amended Complaint, which do not require a response.  To the extent a response is required, Chase denies that Plaintiff's action may be brought, or maintained, as a class action.  Chase denies that any of the requirements for class certification have, or will be, met in this case.  Chase denies each and every remaining allegation in Paragraph 5.

## JURISDICTION AND VENUE

**6.       This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1441(b).**

Chase admits that this Court has jurisdiction over this action.

**7.       Venue is proper in this Court because the subject real property is located in this District.**

Chase admits that venue is proper in this Court.

## THE PARTIES

**8.       Plaintiff Barbara McGarvey ("Ms. McGarvey") is an individual, a citizen of California, and at all relevant times was a resident of Placer County, California.**

Chase lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 8, and on that basis denies each and every allegation in Paragraph 8.

9.      **Defendant JP Morgan Chase Bank, N.A. ("Chase") is a national banking association with branches in 23 states, including California.  It is the successor in interest to mortgage servicer Chase Home Finance, LLC and Washington Mutual Bank, N.A.**

Chase admits that JPMorgan Chase Bank, N.A. is a national banking association, and that JPMorgan Chase Bank, N.A. is successor by merger to Chase Home Finance LLC, as of May 1, 2011.  Answering further, Chase states that the FDIC allocated the assets and liabilities of Washington Mutual Bank pursuant to a Purchase and Assumption Agreement dated September 25, 2008, among JPMorgan Chase Bank, N.A. and the FDIC acting in its corporate capacity and acting as Receiver for Washington Mutual Bank.   Except as expressly admitted, Chase denies the allegations in Paragraph 9.

10.     **The true names and capacities of DOES 1 through 10 are currently unknown to plaintiffs who allege that DOES 1 through 100 are responsible in some manner for the injuries sustained by all plaintiffs as hereinafter alleged.  Plaintiffs request leave to file amendments to this complaint alleging the true names and capacities of DOES 1 through 100 when the same have been ascertained.**

To the extent that Paragraph 10 makes or avers legal conclusions, no response is required. To the extent a response is required, Chase lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 10, and on that basis denies each and every allegation in Paragraph 10.

11.     **Plaintiffs are informed and believe, and on that basis allege, that at all times herein mentioned each of the Defendants was an agent, servant, employee, and/or joint venturer of each of the remaining Defendants, and was at all times acting within the course and scope of such agency, service, employment, and/or joint venture, and each Defendant has ratified, approved, and authorized the acts of each of the remaining Defendants with full knowledge of said facts.**

To the extent that Paragraph 11 makes or avers legal conclusions, no response is required. To the extent a response is required, Chase denies each and every allegation in Paragraph 11.

12.     Defendants, and each of them, aided and abetted, encouraged, and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiffs, as alleged herein.  In taking action, as alleged herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of its/his/her primary wrongdoing and realized that its/his/her conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

To the extent that Paragraph 12 makes or avers legal conclusions, no response is required. To the extent a response is required, Chase denies each and every allegation in Paragraph 12.

13.     There is a unity of interest between Defendants, and each acts as the alter ego of the other.

To the extent that Paragraph 13 makes or avers legal conclusions, no response is required. To the extent a response is required, Chase denies each and every allegation in Paragraph 13.

## FACTUAL BACKGROUND

A.     California's Foreclosure Crisis.

14.     The nation and California continue to suffer from the ongoing foreclosure crisis.  Homeowners who have lost income, or whose mortgage payments on subprime loans have adjusted beyond their reach continue to default on their mortgages and face foreclosure in records numbers.

Chase lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 14, and on that basis denies each and every allegation in Paragraph 14.

15.     Under normal market conditions, homeowners can sell their home and find more affordable housing.  However, due to the now well-documented manipulation of the mortgage markets by Defendants and others, homeowners cannot sell their homes because the market price for the home is typically less than what they owe on the house.

Chase lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 15, and on that basis denies each and every allegation in Paragraph 15.

16.     **Foreclosure is, without question, the worst outcome for investors, borrowers, and the community.  It is a long, drawn-out process in which the investors typically suffer huge losses on the mortgage loan after the home is sold and various costs are deducted.  Borrowers lose their family homes.  Communities suffer from reduced home values, declining property tax revenue to local governments, and blight due to unoccupied homes, among other detriments.**

Chase lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 16, and on that basis denies each and every allegation in Paragraph 16.

17.     **The first national response to the foreclosure crisis was the federal government's multi-billion-dollar Making Home Affordable (MHA) program.  Under the Making Home Affordable program, mortgage servicers entered into contracts with the Department of Treasury to follow uniform guidelines and protocols for modification and short sale, and the government compensates both mortgage servicers and investors who can reduce homeowners' monthly payments and keep them in their homes after they experience financial hardship.**

Chase admits that, in February 2009, the U.S. Department of the Treasury announced the Making Home Affordable Program.  Chase states that Plaintiff purports to characterize the nature of the Making Home Affordable Program, and denies that Plaintiff accurately characterizes or summarizes the Making Home Affordable Program.   Chase lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 17, and on that basis denies those allegations.  Except as expressly admitted, Chase denies the allegations in Paragraph 17.

18.     **Despite adoption by the Federal Government of HAMP as the industry standard, many servicers—including Chase—continue to fail to modify loans in accordance with industry standard principles.  (See "Why Servicers Foreclose When They Should Modify and other Puzzles of Servicer Behavior," National Consumer Law Center Report, October 2009).[2] Servicers, unlike investors or homeowners, do not generally lose money on a**

---

[2] http://www.nclc.org/images/pdf/pr-reports/report-servicers-modify.pdf last visited April 13, 2013.

foreclosure.  **Servicers may even make money on a foreclosure.  And, usually, a loan modification will cost the servicer something (*Id.* at v).**

Chase admits that, in February 2009, the U.S. Department of the Treasury announced the Making Home Affordable Program, of which HAMP is a part.  Chase states that the document cited in paragraph 18 speaks for itself, and denies that Plaintiff accurately characterizes or summarizes the document.  To the extent that Paragraph 18 makes or avers allegations about industry wide practices or otherwise seeks to characterize or opine on the nature, scope, type or specifics of those practices, Chase lacks knowledge and information sufficient to form a belief as to the truth or falsity of those allegations and, on that basis, denies those allegations.  Except as expressly admitted, Chase denies the allegations in Paragraph 18.

**19.     Further, the interests of both borrowers and investors can be marginalized when a conflicted party services a loan.  For instance, the servicer often owns a share in companies which can be billed for ancillary services during the foreclosure process, and charges above market rates on these services; there are conflicts of interest in the governance of the securitization, including the enforcement of representations and warranty issues.  See (See 5/12/2011 Testimony of Laurie Goodman, Amherst Securities Group to the Subcommittee on Housing, Transportation and Community Development ("Goodman Testimony").[3]**

Chase admits that Plaintiff purports to summarize portions of the Goodman Testimony.  Chase states that the testimony speaks for itself, and denies that Plaintiff accurately characterizes or summarizes the testimony.  To the extent that Paragraph 19 makes or avers general allegations about "servicers" other than Chase, Chase lacks knowledge and information sufficient to form a belief as to the truth or falsity of those allegations, and on that basis, denies those allegations.  Except as expressly admitted, Chase denies the allegations in Paragraph 19.

**20.     There have been both state and federal responses to mortgage servicers' continuing failure to engage in loss mitigation promptly, accurately, or transparently. .**

---

[3] http://banking.senate.gov/public/index.cfm?FuseAction=Files.View&FileStore_id=484c5b2b-6924-459f-898e- 3ae075feeb15

California's Homeowner Bill of Rights ("HBOR"), which took effect on January 1, 2013, sets out stringent procedural protections for borrowers seeking modification or other loss mitigation options, prohibits "dual tracking"—the servicer practice of proceeding to foreclosure even while a the borrower is still being considered for loss mitigation options— and provides a private right of action and damages for violations.  The purpose of the Act was to ensure that, "as part of the nonjudicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's servicers, such as loan modifications or other alternatives to foreclosure . . ." Civil Code §2923.4.

Chase admits that Plaintiff purports to summarize the Homeowner Bill of Rights.  Chase states that the Homeowner Bill of Rights testimony speaks for itself, and denies that Plaintiff accurately characterizes or summarizes the Homeowner Bill of Rights.  To the extent that Paragraph 20 makes or avers allegations about industry wide practices or otherwise seeks to characterize or opine on the nature, scope, type or specifics of those practices, Chase lacks knowledge and information sufficient to form a belief as to the truth or falsity of those allegations, and on that basis denies those allegations.  Except as expressly admitted, Chase denies the allegations in Paragraph 20.

21.     Likewise, when the Attorneys General of 49 states entered into a broad-based settlement of claims of mortgage servicing abuses, in *United States of America et al v. Bank of America Corporation et al.*, United States District Court for the Northern District of Columbia, Case No. 1:12-cv-00361 RMC, they created mortgage servicing standards for signatories, including defendant Chase, which demand increased transparency, more accurate communications, and more procedural protections in the loss mitigation process.  Like the Making Home Affordable program described above, the AG Settlement requires servicers to modify loans whenever the benefit of modification outweighs the benefit of refusing to modify (the "Net Present Value" test).

Chase admits that Plaintiff purports to summarize the settlement of *United States of America et al v. Bank of America Corporation et al.*, Case No. 1:12-cv-00361 RMC.  Chase states that the

settlement speaks for itself, and denies that Plaintiff accurately characterizes or summarizes the settlement.  Except as expressly admitted, Chase denies the allegations in Paragraph 21.

**22.    These legislative and executive measures reflect a trend of requiring lenders and mortgage servicers to deal reasonably, accurately, and honestly with borrowers in default in a good faith effort to arrive at a workable loan modification or other foreclosure alternative. Their purpose is clear: to protect vulnerable homeowners from unfair practices and unnecessary foreclosure.**

To the extent that Paragraph 22 makes or avers allegations about "servicers" other than Chase, Chase lacks knowledge and information sufficient to form a belief as to those allegations, and on that basis denies those allegations.  To the extent that Paragraph 22 makes or avers allegations about industry wide practices or otherwise seeks to characterize or opine on the nature, scope, type or specifics of those practices, Chase lacks knowledge and information sufficient to form a belief as to those allegations, and on that basis denies those allegations.  Except as expressly admitted, Chase denies the allegations in Paragraph 22.

**B.    The Emerging "Widows and Orphans" Problem.**

**23.    One category of particularly vulnerable homeowners, however, suffer exceptional difficulty accessing loss mitigation: heirs striving to retain their homes when those homes are encumbered by a mortgage to which the heir is not a party.  When a child, grandchild, or other heir becomes the titleholder of the property after the death of their loved one who was on the mortgage note, servicers often refuse to communicate with the heirs on the ground that they are not the borrower.  The problem also arises when both spouses were on title to a home, but only one (usually the husband) was on the mortgage loan.  After the spouse on the mortgage dies, the servicer refuses to communicate with surviving spouse. Blanket refusal to communicate with the sole remaining owner of the home can result in foreclosure when the surviving spouse or other heir faces financial hardship—or even when the heir needs simple information about the loan like a reinstatement quote to be able to keep the home.**

To the extent that Paragraph 23 makes or avers allegations about other "servicers," Chase lacks knowledge and information sufficient to form a belief as to those allegations, and on that basis denies those allegations.  To the extent that Paragraph 23 makes or avers allegations about industry wide practices or otherwise seeks to characterize or opine on the nature, scope, type or specifics of those practices, Chase lacks knowledge and information sufficient to form a belief as to those allegations, and on that basis denies those allegations.  As to all other allegations in Paragraph 23, Chase denies each and every allegation.

**24.    Although a servicer's complete failure to communicate can be devastating and result in the survivor's loss of the home, an even more abusive practice is to miscommunicate heirs' actual opportunities for loss mitigation, and to engage in loss mitigation review for months or years when the servicer has no intention of allowing the heir or other successor in interest to modify the loan.**

Chase lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 24, and on that basis denies those allegations.

**25.    This is what happened to Barbara McGarvey.  Chase was on notice that the original borrower--Ms. McGarvey's mother--was deceased.  Chase treated Plaintiff for all purposes as if it would actively consider a loan modification when, in fact, its policy is to never grant such modifications unless the survivor has assumed the loan.  As a result, she paid thousands of dollars to Chase to try to keep her home, lost opportunities to use other means to resolve the default, and ultimately lost her home.**

Chase admits that Plaintiff informed Chase that Berdine Sylvia was deceased on or about August 5, 2004.  Chase admits that Berdine Sylvia was the borrower on a loan secured by property located at 1209 Zinfandel Drive, Roseville, CA 95747.  Chase further admits that it foreclosed on the property located at 1209 Zinfandel Drive, Roseville, CA 95747.  Chase lacks knowledge and information sufficient to form a belief as to the truth or falsity of the remaining allegations in the third sentence of Paragraph 25, and on that basis denies those allegations.  Except as expressly admitted, Chase denies the allegations in Paragraph 25.

**C.     Chase's Wrongful Practices Are Harmful To Homeowners And Contrary To Public Policy.**

26.     **Chase's conduct toward heirs and other successors in interest who are not listed on the original loan is harmful to the public in general.  When Chase solicits months or years' worth of loan modification applications, knowing the original borrower is dead, and/or accepts trial modification payments, the homeowner is induced to pass up opportunities for relief (from an outright sale to a short sale to bankruptcy or making a rational decision to stop making payments on an unaffordable loan), the unpaid loan balances go up, including fees and charges, and they lose equity and stand much less of a chance of any loss mitigation.**

Chase denies each and every allegation in Paragraph 26.

27.     **This conduct by Chase is contrary to established policies in federal and state law.  For example, the federal Garn-St. Germain Act ("Garn-St. Germain") limits the ability of mortgagees to exercise due-on-sale clauses when property is transferred to family members in certain situations, including transfers to relatives resulting from death of the borrower; and transfers into an inter vivos trust where the borrower is the beneficiary must be allowed by mortgagees.  12 U.S.C. §1701j-3(d).  California Civil Code section 2924.6 similarly prohibits acceleration when property is transferred through an inter vivos trust or because of the death of a spouse or divorce.**

Chase admits that Plaintiff purports to summarize the Garn-St. Germain Act and California Civil Code section 2924.6.  Chase states that the Garn-St. Germain Act and California Civil Code section 2924.6 speak for themselves, and denies that Plaintiff accurately characterizes or summarizes the Garn-St. Germain Act and California Civil Code section 2924.6.  Except as expressly admitted, Chase denies the allegations in Paragraph 27.

28.     **Other actors have taken concrete steps to force mortgage servicers to deal fairly and transparently with heirs and surviving homeowners.  For example, Fannie Mae and Freddie Mac introduced additional guidance clarifying the servicer's obligations to survivors. Fannie Mae issued guidance stating that servicers must implement policies and procedures to promptly identify and communicate with the new property owner in connection with a**

property transfer that is an exempt transaction.[4]  "These policies and procedures must allow the new owner to continue making mortgage payments and pursue an assumption of the mortgage loan as well as a foreclosure prevention alternative, if applicable.  This includes a widow, executor, or administrator of the borrower's estate, or other authorized representative of the borrower upon notification of the borrower's death."  Freddie Mac has created similar guidance relating to transfers of property after death of a borrower.[5]  Specifically, Freddie Mac recognized that "the death of a Borrower could result in the unnecessary displacement of a person with a legal or beneficial interest in the Mortgaged Premises, such as a surviving spouse, unless the Servicer undertakes prompt loss mitigation activities . . ."

Chase states that the documents cited in paragraph 28 speak for themselves, and denies that Plaintiff accurately characterizes or summarizes the content of the documents.  To the extent that Paragraph 28 makes or avers allegations about industry wide practices or otherwise seeks to characterize or opine on the nature, scope, type or specifics of those practices, Chase lacks knowledge and information sufficient to form a belief as to the truth or falsity of those allegations and, on that basis, denies those allegations.  Except as expressly admitted, Chase denies the allegations in Paragraph 28.

29.     The Consumer Financial Protection Bureau (the "CFPB"), the federal government agency authorized to promulgate rules regarding servicing standards, recognized the difficulties faced by successors in interest and adopted 12 C.F.R. §1024.38(b)(1)(vi) (effective January 2014), which states that servicers shall maintain policies and procedures that are reasonably designed to, upon notification of the death of a borrower, identify promptly and facilitate communication with the successor in interest of the deceased borrower with respect to the property secured by the deceased borrower's mortgage loan. These adopted protections represent the industry standards for servicers dealing with widows and orphans.

---

[4] *See* Fannie Mae Lender Letter LL-2013-04
https://www.fanniemae.com/content/announcement/ll1304.pdf

[5] *See* Freddie Mac Bulletin Number: 2013-3
http://www.freddiemac.com/sell/guide/bulletins/pdf/bll1303.pdf

Chase admits that Plaintiff purports to summarize 12 C.F.R. §1024.38(b)(1)(vi).   Chase states that 12 C.F.R. §1024.38(b)(1)(vi) speaks for itself, and denies that Plaintiff accurately characterizes or summarizes 12 C.F.R. §1024.38(b)(1)(vi).  To the extent that Paragraph 29 makes or avers legal conclusions, no response is required.   To the extent a response is required, Chase lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 29, and on that basis denies each and every allegation.  Except as expressly admitted, Chase denies the allegations in Paragraph 29.

**30.     Finally, on August 30, 2013 in response to growing awareness of the "widows and orphans" problem, The U.S. Department of Treasury issued additional guidance for the Making Home Affordable Program ("HAMP").  Supplemental Directive 13-06 incorporated into the Handbook for Servicers of Non-GSE Mortgages as Section 8.8. includes guidance, "for considering non-borrowers who inherit or are awarded sole title to a property for HAMP . . .  Such non-borrowers may be considered for HAMP if they meet all applicable eligibility criteria . . .servicers should collect an Initial Package from the non-borrower who now owns the property and evaluate the request as if he or she was the borrower."[6]**

Chase admits that Plaintiff purports to summarize in Supplemental Directive 13-06.  Chase states that Supplemental Directive 13-06 speaks for itself, and denies that Plaintiff accurately characterizes or summarizes Supplemental Directive 13-06.  To the extent that Paragraph 30 makes or avers legal conclusions, no response is required.   To the extent a response is required, Chase lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 30, and on that basis denies each and every allegation.  Except as expressly admitted, Chase denies the allegations in Paragraph 30.

**31.     Chase's conduct flies in the face of these standards and frustrates the purpose of these California and federal laws.  Chase, when it is on notice that the original borrower is deceased, is aware that an heir or other successor in interest claims a legitimate legal right to the real property, but refuses to provide accurate, consistent information to heirs about their**

---

[6] *See* Making Home Affordable Supplemental Directive 13-06, https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/sd1306.pdf

**rights to modify and assume the loan.  Chase cannot engage in practices that are contrary to the spirit of Garn-St. Germain, the California Civil Code, and contrary to industry standard by hiding its assumption requirements or modification restrictions, ignoring the survivor's legal interest in the property, and thwarting any chance of keeping the homeowner in the home.  Chase's use of loss mitigation under these circumstances as a collection technique, without any intent to allow modification or give Plaintiffs a genuine opportunity to save their homes, is also an unfair business practice.**

To the extent that Paragraph 31 makes or avers legal conclusions, no response is required. To the extent a response is required, Chase denies each and every allegation in Paragraph 31.

D.      Allegations Specific To Plaintiff Barbara McGarvey.

**32.      Plaintiff Barbara McGarvey is a 60 year old working at The Fresh Market.  She lives at her home at 1209 Zinfandel Drive in Roseville, California.**

Chase lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 32, and on that basis denies each and every allegation.

**33.      In 1995, Ms. McGarvey's step-father, Raymond Sylvia, and her mother, Berdine Sylvia, created the Sylvia Family Trust.  The Trust provided that on the death of the last surviving spouse, their daughter, Ms. McGarvey, would become the sole trustee, and after the trust's expenses were paid, the remaining trust assets would be distributed to Ms. McGarvey**

Chase lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 33, and on that basis denies those allegations.

**34.      In 2004, Ms. McGarvey sold her own home, using the $80,000 proceeds as a down payment for the Zinfandel Drive home, which she bought with her ailing parents so that they could live together and she could care for them.  Because Ms. McGarvey was unemployed at the time, the lender Washington Mutual insisted that the home be purchased solely in Berdine Sylvia's name, with a first-lien, $319,200 home equity line of credit.**

Chase admits that Washington Mutual provided a $319,200 home equity line of credit to Berdine Sylvia for the purchase of Property located at 1209 Zinfandel Drive, Roseville, CA 95747

1  and that, according to the documentation provided to Washington Mutual, Berdine Sylvia was to

2  contribute $80,000 towards the purchase of the property 1209 Zinfandel Drive, Roseville, CA

3  95747.  Chase lacks knowledge or information sufficient to form a belief as to the truth or falsity of

4  the remaining allegations in Paragraph 34, and on that basis denies those allegations.  Except as

5  expressly admitted, Chase denies the allegations in Paragraph 34.

6  **35.      After Raymond Sylvia passed away, Ms. McGarvey became a co-trustee of the**

7  **trust, and Berdine Sylvia quitclaimed the home to "Berdine Sylvia and Barbara McGarvey,**

8  **Trustees of the Sylvia Trust." The quitclaim deed was recorded in July 8, 2004.  On July 14,**

9  **2004 Washington Mutual sent Ms. McGarvey a letter stating , "[w]e are pleased to advise you**

10 **that Washington Mutual consents to your proposed transfer . . ." of the property to the trust.**

11 Chase admits that a quitclaim deed was recorded on July 8, 2004 in connection with the

12 property located at 1209 Zinfandel Drive, Roseville, CA 95747.  Chase admits that on or about July

13 14, 2004, Washington Mutual sent Berdine Sylvia a letter and states that the content of this letter

14 speaks for itself.  Chase lacks knowledge or information sufficient to form a belief as to the truth or

15 falsity of the remaining allegations in Paragraph 35, and on that basis denies those allegations.

16 Except as expressly admitted, Chase denies the allegations in Paragraph 35.

17 **36.      Berdine Sylvia passed away in August, 2004, and Ms. McGarvey became the**

18 **sole trustee of the Sylvia Family Trust.  Ms. McGarvey's representative informed Washington**

19 **Mutual of the deaths and sent the trust papers and other documentation to Washington**

20 **Mutual.**

21 Chase admits that on or about November 1, 2004, Washington Mutual received

22 correspondence regarding Berdine Sylvia's death.  Chase lacks knowledge or information sufficient

23 to form a belief as to the truth or falsity of the remaining allegations in Paragraph 36, and on that

24 basis denies those allegations.  Except as expressly admitted, Chase denies the allegations in

25 Paragraph 36.

26 **37.      Ms. McGarvey made timely payments on the loan from 2004 to 2009.  During**

27 **that period, she paid nearly $100,000 in interest on the loan.**

28

Chase admits that between 2004 and 2009 payments were made on the loan originated by Berdine Sylvia and secured by real property located at 1209 Zinfandel Drive, Roseville, CA 95747. Chase admits that under the terms of the loan originated by Berdine Sylvia, payments made on the loan from 2004 to 2009 were applied to interest and fees only and were not credited towards the principal amount owed on the loan.  Chase lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 37, and on that basis denies those allegations.  Except as expressly admitted, Chase denies the allegations in Paragraph 37.

**38.     Defendant JPMorgan Chase purchased Washington Mutual's assets, including the loan at issue here, in late 2008.  Chase sent notice to "Berdine Sylvia / Trustee C/O Barbara McGarvey" that it was the new servicer of the loan on October 22, 2009.**

Chase admits that it acquired the rights to service the loan originated by Berdine Sylvia and secured by real property located at 1209 Zinfandel Drive, Roseville, CA 95747.  Chase admits that on or about October 22, 2009, Chase sent a letter to Berdine Sylvia concerning the servicing of the loan that Berdine Sylvia had originated, and states that the content of this letter speaks for itself. Except as expressly admitted, Chase denies the allegations in Paragraph 38.

**39.     In 2009, Ms. McGarvey's income decreased after an annuity ended and she was laid off from a job.**

Chase lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 39, and on that basis denies those allegations.

**40.     Ms. McGarvey applied for a loan modification several times from 2010-2011. Afraid that Chase might foreclose on the home during her repeated applications, and desperate to save her home, Ms. McGarvey made efforts to catch up on her payments.  She paid over $10,000 in mortgage interest in 2010, and over $2,000 in interest payments in 2011. While she was able to bring the loan current on several occasions, she was unable to stay current.**

Chase admits that as of September 14, 2011 a total of $9,756.86 was past due on the loan originated by Berdine Sylvia and secured by real property located at 1209 Zinfandel Drive, Roseville, CA 95747.  Chase admits that applications for a modification of the loan originated by

Berdine Sylvia and secured by real property located at 1209 Zinfandel Drive, Roseville, CA 95747 were submitted to Chase in March 2011, in January 2012, and in June 2012.  Chase admits that $11,797.57 was paid towards the outstanding amounts owed on the loan secured by real property located at 1209 Zinfandel Drive, Roseville, CA 95747 between January 1, 2010 and January 1, 2011.  Chase admits that $2,933.29 was paid towards the outstanding amounts owed on the loan secured by real property located at 1209 Zinfandel Drive, Roseville, CA 95747 between January 1, 2011 and February 28, 2011.  Chase lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 40, and on that basis denies those allegations.  Except as expressly admitted, Chase denies the allegations in Paragraph 40.

**41.     At first, Ms. McGarvey believed she was already on the loan because Washington Mutual had consented to the transfer of the property to the trust.  When she learned Chase would require additional steps, she tried to complete them, but was stymied by Chase at every turn.  For example, Ms. McGarvey applied again in or around March of 2011.  When Chase representatives told her she would have to purchase homeowners' insurance to apply for a modification (which she had allowed to lapse because of her financial hardship), she did so, in April, 2011.  Chase again requested documents showing she was the owner of the property.  Ms. McGarvey again submitted her mother's death certificate, the trust documents, and the quitclaim deed to Chase.**

Chase admits that on or about July 14, 2004, Washington Mutual sent correspondence to Berdine Sylvia concerning her request to transfer title of the property located at 1209 Zinfandel Drive, Roseville, CA 95747 to the Raymond Sylvia and Berdine Sylvia Family Trust, and states that the contents of this letter speaks for itself.  Chase admits that an application to modify the loan originated by Berdine Sylvia and secured by property located at 1209 Zinfandel Drive, Roseville, CA 95747 was received by Chase in March 2011.  Chase admits that in April 2011 it received documents regarding the request to modify the loan originated by Berdine Sylvia and secured by property located at 1209 Zinfandel Drive, Roseville, CA 95747, but denies that these documents included either Berdine Sylvia's death certificate, documents concerning the Raymond Sylvia and Berdine Sylvia Family Trust or the quitclaim deed for 1209 Zinfandel Drive, Roseville, CA 95747.

1    Chase lacks knowledge or information sufficient to form a belief as to the truth or falsity of the

2    remaining allegations in Paragraph 41, and on that basis denies those allegations.   Except as

3    expressly admitted, Chase denies the allegations in Paragraph 41.

4    **42.    In June, 2011, a Chase representative named Brian told her that "all that was**

5    **needed to complete everything" was for her to fill out an assumption packet, which she could**

6    **pick up in the "real estate department" of a Sacramento Chase office.  When she went there,**

7    **Chase representatives told her no such department existed, and they had no assumption**

8    **documents to give her.  She looked online and went to yet another branch, but was unable to**

9    **obtain an assumption application.  When Chase representatives again insisted that she had to**

10   **be the executor of the estate in order to have her loan modified, and she tried to explain that**

11   **she held title as the trustee of the trust, Chase representatives said that she would have to**

12   **speak to the legal department, and they would contact her.  They never did.  When she called**

13   **to check on the status of her application a few weeks later, she was told that she could not**

14   **modify because she was not the borrower or the executor of the estate, and was no more than**

15   **a "squatter" on the property.**

16   Chase admits that Plaintiff was informed in June 2011 that the she would be unable to

17   modify the loan originated by Berdine Sylvia and secured by property located at 1209 Zinfandel

18   Drive, Roseville, CA 95747 unless she first assumed the loan.   Chase admits that Plaintiff was

19   informed in June 2011 that in order to determine whether she would be eligible to assume the loan

20   originated by Berdine Sylvia and secured by property located at 1209 Zinfandel Drive, Roseville,

21   CA 95747, she would have to provide information to Chase in the form of an "assumption

22   package."  Chase lacks knowledge or information sufficient to form a belief as to the truth or falsity

23   of the remaining allegations in Paragraph 42, and on that basis denies those allegations.  Except as

24   expressly admitted, Chase denies the allegations in Paragraph 42.

25   **43.    Throughout this period, Chase treated Ms. McGarvey as though she stood in**

26   **her mother's shoes with respect to the loan for some purposes, but not others.  In July, 2011,**

27   **for example, Chase sent multiple letters soliciting a modification application to "Berdine**

28   **Sylvia c/o Barbara McGarvey, Trustee."  In September, 2011, Chase recorded a Notice of**

**Default on the loan, stating that it was $9,756 in arrears.  Chase's declaration pursuant to Civil Code 2923.5 listed Sylvia Berdine as the "borrower," and represented that Chase had contacted "the borrower" to "discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure in compliance with Cal. Civ. Code Section 2923.5" even though Sylvia Berdine died in 2004.  While Chase apparently represented that Ms. McGarvey was the "borrower" for purposes foreclosure, it alternately refused to communicate with her about the loan, or solicited loan modification applications, only to deny them months into the process.**

Chase admits it sent correspondence addressed to Berdine Sylvia c/o Barbara McGarvey, Trustee concerning the status of the loan originated by Berdine Sylvia and secured by property located at 1209 Zinfandel Drive, Roseville, CA 95747 and its default, and states that the contents of this letter speaks for itself.  Chase lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 43, and on that basis denies those allegations.  Except as expressly admitted, Chase denies the allegations in Paragraph 43.

**44.     Despite these mixed signals, Ms. McGarvey reasonably believed that she could be eligible for a modification because Chase continued to send her letters soliciting new loan modification applications for allegedly new programs, process her applications, and accept her partial payments or trial modification payments even when it was on notice that Berdine Sylvia had died in 2004.  Had Ms. McGarvey known, at any point from 2004 to 2013, that Chase would refuse to treat her as the borrower, and categorically refuse to modify the loan on her home, she would have taken other steps that would have allowed her to save her home, such as selling the home, applying for a short sale, or filing for bankruptcy.**

Chase admits it sent correspondence addressed to Berdine Sylvia c/o Barbara McGarvey, Trustee concerning the status of the loan originated by Berdine Sylvia and secured by property located at 1209 Zinfandel Drive, Roseville, CA 95747 and its default, and states that the contents of this letter speaks for itself.  Chase denies that Washington Mutual and/or Chase failed to provide information to Plaintiff about her options for assuming and/or modifying the loan originated by Berdine Sylvia and secured by property located at 1209 Zinfandel Drive, Roseville, CA 95747.

1   Chase lacks knowledge or information sufficient to form a belief as to the truth or falsity of the

2   remaining allegations in Paragraph 44, and on that basis denies those allegations.  Except as

3   expressly admitted, Chase denies the allegations in Paragraph 44.

4        **45.    After Chase recorded the Notice of Default, Ms. McGarvey hired a law firm in**

5   **Florida that submitted a new modification application on her behalf at the end of 2011.**

6   **Ms. McGarvey paid the law firm $5,000 to handle her dealings with Chase.  The law firm also**

7   **tried to get an assumption application from Chase, but failed.  (Ms. McGarvey is informed**

8   **and believes the law firm stopped helping her on or around February, 2012.)**

9        Chase admits it recorded a Notice of Default regarding the loan originated by Berdine Sylvia

10  and secured by property located at 1209 Zinfandel Drive, Roseville, CA 95747.  Chase admits that

11  Plaintiff was not able to assume the loan originated by Berdine Sylvia and secured by property

12  located at 1209 Zinfandel Drive, Roseville, CA 95747.  Chase lacks knowledge or information

13  sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 45, and

14  on that basis denies those allegations.  Except as expressly admitted, Chase denies the allegations in

15  Paragraph 45.

16       **46.    Chase sent a trial modification offer to "Berdine Sylvia, 1209 Zinfandel Drive**

17  **c/o McGarvey" in June, 2012.  The trial modification offered to reduce her principal balance**

18  **by over $86,000 to forbear from charging interest on over $24,000 of the remaining balance,**

19  **and to reduce her monthly payment to $675.06 per month for the first five years of the**

20  **modification payment.  The trial modification called for three monthly payments for July,**

21  **August, and September, 2012**.

22       Chase admits that on or about June 6, 2012 it sent correspondence addressed to Berdine

23  Sylvia regarding a possible modification of the loan originated by Berdine Sylvia and secured by

24  property located at 1209 Zinfandel Drive, Roseville, CA 95747, and states that the contents of this

25  letter speaks for itself.  Except as expressly admitted, Chase denies the allegations in Paragraph 46.

26       **47.    Ms. McGarvey is informed and believes that, had Chase treated her as the**

27  **borrower, she would have qualified for the permanent modification for which the trial**

28  **modification had been offered.**

Chase lacks knowledge and information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 47, and on that basis denies those allegations.

**48.     Ms. McGarvey signed the modification papers, "Berdine Sylvia, by Barbara McGarvey POA," as she believed the power of attorney was still effective, and returned them, along with the first modification payment for July, 2012.**

Chase admits that Barbara McGarvey signed Berdine Sylvia's name and asserted that she had a power of attorney to do so on documents she submitted to Chase in July 2012.  Chase admits that on July 2, 2012 it received a payment for $500.00 and a payment for $175.06 in connection with the loan secured by real property located at 1209 Zinfandel Drive, Roseville, CA 95747. Chase lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 48, and on that basis denies those allegations.   Except as expressly admitted, Chase denies the allegations in Paragraph 48.

**49.     Chase sent Ms. McGarvey a letter in late June, 2012 indicating that "at least one borrower signature is missing from the Loan Modification Agreement," and that the modification "may" be denied if Chase did not receive a executed agreement signed and dated by all borrowers.  Ms. McGarvey again faxed Berdine Sylvia's death certificate to Chase.**

Chase admits that on or about June 25, 2012 it sent correspondence addressed to Berdine Sylvia, and states that the contents of this letter speaks for itself.  Chase admits that on or about June 28, 2012, it received by facsimile a copy of Berdine Sylvia's death certificate.  Except as expressly admitted, Chase denies the allegations in Paragraph 49.

**50.     Ms. McGarvey timely made, and Chase accepted, the final two trial modification payments for August and September, 2012.**

Chase admits that on August 1, 2012 it received a payment for  $500.00 and a payment for $175.06 in connection with the loan secured by real property located at 1209 Zinfandel Drive, Roseville, CA 95747.  Chase admits that on August 29, 2012, it received a payment for $500.00 and a payment for $175.06 in connection with the loan secured by real property located at 1209 Zinfandel Drive, Roseville, CA 95747.  Chase lacks knowledge or information sufficient to form a

belief as to the truth or falsity of the remaining allegations in Paragraph 50, and on that basis denies those allegations.  Except as expressly admitted, Chase denies the allegations in Paragraph 50.

**51.     In September, 2012, Ms. McGarvey received a short sale solicitation from Chase, addressed to Berdine Sylvia, "C/O McGarvey," which said "you may be able to owe nothing more on your home equity account, avoid foreclosure and get $30,000 after you sell your home! . . .  This program also may allow you to stay in your home while it is for sale. Plus, after you sell your house, you can use the $30,000 to pay expenses, including moving to a new home."**

Chase admits that on or about August 31, 2012 it sent correspondence addressed to Berdine Sylvia, and states that the contents of this letter speaks for itself.  Except as expressly admitted, Chase denies the allegations in Paragraph 51.

**52.     Confused, Ms. McGarvey called to find out about the status of the modification and to get more payment coupons.  A Chase representative told her that the modification had been denied, that he could speak only to the executor, and he could not speak to her further.**

Chase admits that on September 6, 2012, an individual claiming to be Barbara McGarvey called Chase to discuss the loan originated by Berdine Sylvia and secured by property located at 1209 Zinfandel Drive, Roseville, CA 95747.  Chase admits that during the call on September 6, 2012 a Chase representative informed the caller that Chase needed confirmation that the caller was the legal representative of Berdine Sylvia's estate in order to discuss the loan originated by Berdine Sylvia with the caller.  Chase lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 52, and on that basis denies those allegations.  Except as expressly admitted, Chase denies the allegations in Paragraph 52.

**53.     In October, 2012, Chase recorded a Notice of Trustee's Sale stating that over $340,000 was due on the loan.  In November, 2012, Ms. McGarvey called again and was told that her application had been denied because she was a "third party."**

Chase admits that on October 31, 2012 a Notice of Trustee Sale was filed against the property located at 1209 Zinfandel Drive, Roseville, CA 95747, and states that the content of this document speaks for itself.  Chase admits that an individual claiming to be Barbara McGarvey

called Chase in November 2012 to discuss the loan originated by Berdine Sylvia and secured by property located at 1209 Zinfandel Drive, Roseville, CA 95747.  Chase lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 53, and on that basis denies those allegations.  Except as expressly admitted, Chase denies the allegations in Paragraph 53.

**54.    Ms. McGarvey finally received a written denial letter in December, 2012.  The letter stated that "Chase is not able to review this loan for a modification in your name.  You are not listed on the borrower on the mortgage loan.  Additionally, we are unable to share information regarding the loan with you because we do not have the legal documentation advising who the legal representative of the estate is." In response, Ms. McGarvey again sent in proof that the property was held in the trust, and she was the sole trustee and beneficiary of the trust.**

Chase admits that on or about December 4, 2012 it sent correspondence addressed to Barbara McGarvey, and states that the content of this letter speaks for itself.    Chase lacks knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 54, and on that basis denies those allegations.  Except as expressly admitted, Chase denies the allegations in Paragraph 54.

**55.    Chase sent a second denial letter in early January, 2013.  That letter stated: "Although a trial modification was in process for this loan, it was during that process that we determined that you are not a signer of the account . . . .  At this time, there currently are not modification programs available for third parties on a home equity loan . . . .[¶]  In regard to the letter from Washington Mutual dated July 14, 2004, which stated that a one time transfer would be allowed if they received documents within 90 days, Chase is unable to honor that offer at this time."**

Chase admits that on or about January 11, 2013 it sent correspondence addressed to Barbara McGarvey, and states that the contents of this letter speaks for itself.  Except as expressly admitted, Chase denies the allegations in Paragraph 55.

56.     **Chase sold the home to a third party at a foreclosure sale on or about January 29, 2013.  The trustee's deed was recorded on February 25, 2013.**

Chase admits that the property located at 1209 Zinfandel Drive, Roseville, CA 95747 was sold on or about January 29, 2013, and that a trustee's deed was recorded on February 25, 2013. Except as expressly admitted, Chase denies the allegations in Paragraph 56.

57.     **Chase's inexplicable and outrageously shoddy servicing of the loan continued even after the home had been sold.  In early March, Ms. McGarvey received a letter asking her to send proof that she was the executor of the estate.  On March 9, 2013, Chase representative Jennifer Reaves called Ms. McGarvey, reiterated that the modification was denied because Ms. McGarvey was not the borrower, and told her—incorrectly—that the house had not yet been sold at a trustee's sale.**

Chase admits that on or about March 7, 2013 it sent correspondence addressed to Berdine Sylvia, and states that the content of this letter speaks for itself.  Except as expressly admitted, Chase denies the allegations in Paragraph 57.

58.     **Chase's failure to process Ms. McGarvey for assumption simultaneously with its processing of her multiple modification applications, its refusal to treat her as a borrower, even after placing her in a trial modification and collecting trial payments, and its conduct in foreclosing without giving her a genuine opportunity to modify constitute negligence and unfair business practices.**

To the extent that Paragraph 58 makes or avers legal conclusions regarding negligence and unfair business practices, no response is required.  To the extent a response is required, Chase denies each and every allegation in Paragraph 58.

59.     **Ms. McGarvey suffered enormous harm as a result of Chase's conduct.  Chase's mixed signals, confusing solicitations, refusals to communicate, inaccurate communications, and erroneous servicing made it impossible for Ms. McGarvey to get the modification for which Chase represented she could qualify, which would have reduced her loan balance by $86,000 and reduced her monthly payment amount by nearly a third, allowing her to remain**

1   in her home.  As a result, the house was sold to a third party during the foreclosure, and she

2   faces eviction and the permanent loss of her home of nearly a decade.

3        Chase admits the property located at 1209 Zinfandel Drive, Roseville, CA 95747 was sold in

4   a foreclosure sale.  Except as expressly admitted, Chase denies the allegations in Paragraph 59.

5        **60.     Chase's unfair course of conduct—of accepting Ms. McGarvey's payments and**

6   **partial payments, and repeatedly funneling her into a modification process without**

7   **simultaneously processing her for an assumption—or even making it possible for her apply—**

8   **unfairly bled her of money she desperately needed.  Over the course of three years, she made**

9   **tens of thousands of dollars of mortgage payments, bought homeowners' insurance, and paid**

10  **several attorneys and modification companies well over $5,000 to try to save the home, which**

11  **she would not have paid had she known Chase would categorically refuse to modify.**

12       Chase denies that it has engaged in any unfair conduct.  To the extent that Paragraph 60

13  makes or avers legal conclusions, no response is required.  To the extent that a response to the

14  remaining allegations in Paragraph 60 is required, Chase lacks knowledge and information

15  sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 60, and

16  on that basis denies those allegations.  Except as expressly admitted, Chase denies the allegations in

17  Paragraph 60.

18       **61.     Chase's confusing and conflicting communications and intermittent refusals to**

19  **communicate robbed her of the opportunity to find other ways of resolving her default, from**

20  **sale to short sale to bankruptcy, where a bankruptcy court could have ordered modification**

21  **even if she was not on the loan.  Because the unpaid balance on the loan continued to increase**

22  **whenever she fell behind or made partial or trial modification payments, her chances of being**

23  **able to resolve the delinquency through other means diminished and ultimately disappeared**

24  **when the home was sold.**

25       Chase admits that the unpaid balance on the loan originated by Berdine Sylvia and secured

26  by property located at 1209 Zinfandel Drive, Roseville, CA 95747 increased when the payments

27  required under the terms of this loan were not made, or were not made in a timely manner.  Chase

28  admits the property located at 1209 Zinfandel Drive, Roseville, CA 95747 was sold in a foreclosure

1   sale.  To the extent that Paragraph 61 makes or avers legal conclusions with respect to what a

2   bankruptcy court could, or could not, order, no response is required.  Except as expressly admitted,

3   Chase denies the allegations in Paragraph 61.

4       **62.     Chase's course of conduct also caused Ms. McGarvey to continue making**

5   **interest-only payments on the loan, in the reasonable belief that Chase was willing to treat her**

6   **as the borrower for purposes of loss mitigation.  Another opportunity Ms. McGarvey**

7   **forewent, therefore, in reliance on Chase's conduct, was simply stopping payments on the**

8   **property when she first fell behind**

9       Chase lacks knowledge and information sufficient to form a belief as to the truth or falsity of

10  the allegations in Paragraph 62, and on that basis denies those allegations.

11      **63.     Chase's acts set out above were made in conscious disregard of Plaintiff's rights**

12  **and with the full knowledge that Chase's conduct would cause the loss of Plaintiff's home.**

13      To the extent that Paragraph 63 makes or avers legal conclusions, no response is required.

14  To the extent a response is required, Chase denies each and every of allegation in Paragraph 63.

15                              **CLASS ALLEGATIONS**

16      **64.     Under the umbrella of "Widows and Orphans", Plaintiff proposes several**

17  **specific subclasses of homeowners.  The first is a proposed "Solicitation Class" which consists**

18  **of all California residents where:**

19          **a.      The individual has legal title to or an ownership interest in residential**

20                  **real property encumbered by a loan serviced or owned by Defendant;[7]**

21          **b.      Every borrower named on the loan encumbering the property has died**

22                  **and Defendant is on notice or should have known that each borrower is**

23                  **deceased;**

24          **c.      Defendant was on notice that the individual claimed legal title to or an**

25                  **ownership interest in the property as a result of the original borrower(s)**

26                  **death; and**

27  _____

28  **[7] For ease of reference, other portions of this Complaint will refer to such an individual as a**
    **"successor-in-interest."**

      **d.**      **Defendant solicited and/or accepted an application for a modification or a trial modification of the loan while Defendant's policy was to not deal with or offer foreclosure prevention alternatives such as modification to anyone but the original borrower(s).**

Chase denies that Plaintiff's action may be brought, or maintained, as a class action. Chase denies that any of the requirements for class certification have been, or will be, met in this case. The remainder of Paragraph 64 states legal conclusions to which no response is required. To the extent that a response is required, Chase denies the remaining allegations of Paragraph 64.

      **65.**      **The proposed "Completed Trial Modification Class" consists of all California residents where all of the following conditions apply:**

      **a.**      **The individual has legal title to or an ownership interest in residential real property encumbered by a loan serviced or owned by Defendant;**

      **b.**      **Every borrower named on the loan encumbering the property has died, and Defendant is on notice or should have known that each borrower is deceased;**

      **c.**      **Defendant was on notice that the individual claimed legal title to or an ownership interest in the property as a result of the original borrower(s) death;**

      **d.**      **Defendant offered a trial modification of the loan while Defendant's policy was to not deal with or offer foreclosure prevention alternatives such as modification to anyone but the original borrower(s); and**

      **e.**      **The individual, if considered for modification under the same standards as the borrower, would have qualified for permanent modification and the individual made, and Defendant accepted, all of the payments due under the trial modification.**

Chase denies that Plaintiff's action may be brought, or maintained, as a class action. Chase denies that any of the requirements for class certification have been, or will be, met in this case.

The remainder of Paragraph 65 states legal conclusions to which no response is required.  To the extent that a response is required, Chase denies the remaining allegations of Paragraph 65.

66.     The proposed "Communication Class" consists of all California residents where all of the following conditions apply:

a.     The individual has legal title to, an ownership interest in, or a legal right to residential real property encumbered by a loan serviced or owned by Defendant;

b.     Every borrower named on the loan encumbering the property has died, and Defendant is on notice or should have known that each borrower is deceased;

c.     Defendant was on notice that the individual has legal title to, an ownership interest in, or legal right to the property; and

d.     Defendant refused to communicate with the individual, or that individual's authorized representative, about the loan on the ground that the individual is not the borrower listed on the note.

Chase denies that Plaintiff's action may be brought, or maintained, as a class action.  Chase denies that any of the requirements for class certification have been, or will be, met in this case.  The remainder of Paragraph 66 states legal conclusions to which no response is required.  To the extent that a response is required, Chase denies the remaining allegations of Paragraph 66.

67.     Excluded from the subclasses are Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns.  Also excluded from the Classes is any governmental entity, judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.  Plaintiff reserves the right to modify the Class definitions and Class period based on the results of discovery.

Chase denies that Plaintiff's action may be brought, or maintained, as a class action.  Chase denies that any of the requirements for class certification have been, or will be, met in this case.

1   The remainder of Paragraph 67 states legal conclusions to which no response is required. To the

2   extent that a response is required, Chase denies the remaining allegations of Paragraph 67.

3       **68.    Plaintiff seeks to recover actual damages for herself and the Class under her**

4   **common law claim and restitution under California's Unfair Business Practices Act,**

5   **California Business & Professions Code §17200,** *et seq.*

6       Chase admits that Plaintiff filed a complaint in the above captioned action that includes a

7   prayer for relief and a request for damages and injunctive relief on behalf of herself and an alleged

8   putative class. Chase denies that Plaintiff's action may be brought, or maintained, as a class action.

9   Chase denies that any of the requirements for class certification have been, or will be, met in this

10  case. Chase denies that Plaintiff or any putative class members have suffered any damages, injury,

11  or harm whatsoever due to any conduct by Chase. The remainder of Paragraph 68 states legal

12  conclusions to which no response is required. To the extent that a response is required, Chase

13  denies the remaining allegations of Paragraph 68. Except as expressly admitted, Chase denies the

14  allegations in Paragraph 68.

15      **69.    Plaintiff also brings this action for equitable, injunctive, and declaratory relief**

16  **pursuant to California Code of Civil Procedure Section 382 and 1060. The Class is so**

17  **numerous that joinder of all members is impracticable. While the exact number of Class**

18  **members is unknown at this time, Plaintiff is informed and believes that the Class members**

19  **number in the hundreds, if not thousands. The identity of the class members can be readily**

20  **ascertained from Chase's books and records.**

21      Chase admits that Plaintiff filed a complaint in the above captioned action that includes a

22  prayer for relief and a request for damages and injunctive relief on behalf of herself and an alleged

23  putative class. Chase denies that Plaintiff's action may be brought, or maintained, as a class action.

24  Chase denies that any of the requirements for class certification have been, or will be, met in this

25  case, or that the identity of class members can be readily ascertained from Chase's books and

26  records. The remainder of Paragraph 69 states legal conclusions to which no response is required.

27  To the extent that a response is required, Chase denies the remaining allegations of Paragraph 69.

28  Except as expressly admitted, Chase denies the allegations in Paragraph 69.

70.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Chase has acted with respect to the Class in a manner generally applicable to Plaintiff and each Class member. There is a well-defined community of interest in the questions of law and fact involved in this action, which affects all class members.  These common questions include:

a.     Whether Chase owed a duty of case to Plaintiffs;

b.     The scope and extent of Chase's duty to Plaintiffs;

c.     Whether Chase violated that duty;

d.     Whether Chase's breach of duty caused Plaintiffs' damages;

e.     Whether Chase's solicitation of a loan modification application when it is on notice of the death of the borrower and Plaintiff's, and members of the putative class, claim to the property, alone or in combination with Chase's conduct of accepting payments after default, accepting and considering or processing requests for loss mitigation constitutes negligence or an unlawful, unfair, or fraudulent business practice;

f.     Whether Chase's offer of a trial modification and acceptance of a payment on trial plan, when it is on notice of the death of the borrower and the successor in interest's claim to the property constitutes negligence or an unlawful, unfair, or fraudulent business practice;

g.     Whether Chase's refusal to communicate with successors in interest about the loan, loan modification, or assumption, when it is on notice of the death of the borrower and the successor in interest's claim to the property constitutes negligence or an unlawful, unfair, or fraudulent act or practice;

h.     Whether the Court can order injunctive relief or damages, and if so, what form the injunctive relief should take.

Chase denies that Plaintiff's action may be brought, or maintained, as a class action.  Chase denies that any of the requirements for class certification have been, or will be, met in this case.

1    The remainder of Paragraph 70 states legal conclusions to which no response is required.  To the

2    extent that a response is required, Chase denies the remaining allegations of Paragraph 70.

3    **71.    Plaintiff's claims are typical of the claims of other members of the Class in that**

4    **Plaintiff and other Class members were similarly harmed by the actions of Defendants.**

5    **Plaintiff is a member of the Class she seeks to represent and has suffered harm due to the**

6    **unfair, deceptive, unreasonable and unlawful practices of Defendants.  Plaintiff will fairly and**

7    **adequately represent the interests of the Class; their interests are coincident with, and not**

8    **antagonistic to those of the Class she seeks to represent.**

9    Chase denies that Plaintiff's action may be brought, or maintained, as a class action.  Chase

10   denies that any of the requirements for class certification have been, or will be, met in this case.

11   Chase denies that Plaintiff or any putative class members have suffered any damages, injury, or

12   harm whatsoever due to any conduct by Chase.   The remainder of Paragraph 71 states legal

13   conclusions to which no response is required.   To the extent that a response is required, Chase

14   denies the remaining allegations of Paragraph 71.

15   **72.    Plaintiff is represented by experienced and able attorneys who intend to**

16   **prosecute this action vigorously for the benefit of Plaintiff and all Class members.  Plaintiff**

17   **and counsel will fairly and adequately protect the interests of the Class members.**

18   Chase denies that Plaintiff's action may be brought, or maintained, as a class action.  Chase

19   denies that any of the requirements for class certification have been, or will be, met in this case.

20   The remainder of Paragraph 72 states legal conclusions to which no response is required.  To the

21   extent that a response is required, Chase denies the remaining allegations of Paragraph 72.

22   **73.    Defendant has acted or refused to act, with respect to some or all issues**

23   **presented in this complaint, on grounds generally applicable to the Class, thereby making it**

24   **appropriate to provide relief with respect to the Class as a whole.  A class action is the best**

25   **available method of the efficient adjudication of this litigation because individual litigation of**

26   **Class members' claims would be impracticable and unduly burdensome to the courts, and**

27   **have the potential to result in inconsistent or contradictory judgments.  There are no unusual**

28   **difficulties likely to be encountered in the management of this litigation as a class action.  A**

1  **class action presents fewer management problems and provides the benefits of single**

2  **adjudication, economies of scale, and comprehensive supervision by a single court.**

3      Chase denies that Plaintiff's action may be brought, or maintained, as a class action.  Chase

4  denies that any of the requirements for class certification have been, or will be, met in this case.

5  The remainder of Paragraph 73 states legal conclusions to which no response is required.  To the

6  extent that a response is required, Chase denies the remaining allegations of Paragraph 73.

7      **74.    Plaintiff and the Class are entitled to an award of attorney fees and costs**

8  **against Defendants pursuant to the provisions of California Code of Civil Procedure section**

9  **1021.5.**

10     Chase denies that Plaintiff's action may be brought, or maintained, as a class action.  Chase

11  denies that any of the requirements for class certification have been, or will be, met in this case.

12  Chase denies that Plaintiff or any putative class members are entitled to an award of attorney fees

13  and costs pursuant to California Code of Civil Procedure section 1021.5.   The remainder of

14  Paragraph 74 states legal conclusions to which no response is required.   To the extent that a

15  response is required, Chase denies the remaining allegations of Paragraph 74.

16                        **First Claim For Relief**
                              (Negligence)

17
                        **California Civil Code §1714**
18                         (Against All Defendants)

19     **75.    Plaintiff incorporates by reference the preceding paragraphs of this Complaint**

20  **as though fully set forth herein.**

21      Chase reasserts and hereby incorporates by reference its responses to the preceding

22  paragraphs of the First Amended Complaint above as though fully set forth herein.

23      **76.    Plaintiff brings this claim on her own behalf and on behalf of each member of**

24  **the Solicitation Class and the Completed Trial Modification Class described above.**

25      Chase denies that Plaintiff's action may be brought, or maintained, as a class action.  Chase

26  denies that any of the requirements for class certification have been, or will be, met in this case.

27  The remainder of Paragraph 76 states legal conclusions to which no response is required.  To the

28  extent that a response is required, Chase denies the remaining allegations of Paragraph 76.

**77.      Chase's conduct described above when it is on notice that the borrower is deceased and the successor in interest claims an ownership interest in the property, including but not limited to 1) failing to take adequate steps to inform the successor about its assumption requirements or processes; 2) having policies and procedures that make the assumption process difficult or impossible to complete; 3) accepting payments after default or partial payments; 4) soliciting a loss mitigation applications for loss mitigation; 5) accepting and processing applications for foreclosure prevention alternatives; 6) offering trial modification plans; and 7) accepting trial plan payments, constituted negligence.**

Paragraph 77 states legal conclusions to which no response is required.  To the extent that a response is required, Chase denies the each and every allegation in Paragraph 77.

**78.      Courts have historically been reluctant to impose a duty of care on the arm's-length relationship between lenders and borrowers.  However, in recent years, both California and federal courts have recognized that the complex relationship between homeowners and the modern mortgage loan servicers who perform collection and loss mitigation functions encompasses far more than a simple loan transaction, and can give rise to a duty of care, particularly where the servicer undertakes processing of a loan modification application.**

Paragraph 78 states legal conclusions to which no response is required.  To the extent that a response is required, Chase denies each and every allegation in Paragraph 78.

**79.      Chase also owes a duty of care under California Civil Code section 1714 to Plaintiff, and the putative class, because it solicited modifications or other loss mitigation options while on notice of the death of the borrower and the successor in interest's claim to ownership, and because it undertook review of Plaintiff's applications for modification or other loss mitigation options.**

Paragraph 79 states legal conclusions to which no response is required.  To the extent that a response is required, Chase denies each and every allegation in Paragraph 79.

**80.      Chase breached its duty to Plaintiff, and the putative class, by failing to exercise ordinary care or skill, in that Chase sent solicitations for modifications and/or other loss mitigation options on the loans encumbering Plaintiff's homes, reviewing their applications,**

1   **or starting trial modifications, when it never intended to approve Plaintiffs for modification**

2   **or treat them as the borrower for any purpose other than collecting payments.**

3   Paragraph 80 states legal conclusions to which no response is required.  To the extent that a

4   response is required, Chase denies each and every allegation in Paragraph 80.

5   **81.    Defendant breached its duty by failing to acknowledge Plaintiff as the rightful**

6   **owner of the property when it knew or should have known Plaintiff was the successor in**

7   **interest; by failing to effectively inform Plaintiff about the assumption process; by having**

8   **practices and procedures in place that made it difficult or impossible for borrowers to apply**

9   **for assumption; by engaging with Plaintiff in the loss mitigation process, and soliciting**

10  **Plaintiff for various modifications, that it never intended to approve; by failing to provide**

11  **accurate information about the loan and the modification process for nearly two years; by**

12  **offering and accepting payments under the Trial Period Plan and effectively treating Plaintiff**

13  **as the borrower and then refusing to permanently modify the loan.**

14  Paragraph 81 states legal conclusions to which no response is required.  To the extent that a

15  response is required, Chase denies each and every allegation in Paragraph 81.

16  **82.    As a direct and proximate result of the negligence, Chase caused damage to**

17  **Plaintiffs, including but not limited to causing them to lose title to their home, causing them to**

18  **forego other options for addressing their default and/or unaffordable mortgage payments,**

19  **additional income tax liability, costs and expenses incurred to prevent or fight foreclosure,**

20  **and other damages.**

21  Chase denies that Plaintiff's action may be brought, or maintained, as a class action.  Chase

22  denies that any of the requirements for class certification have been, or will be, met in this case.

23  Chase denies that Plaintiff or any putative class members have suffered any damages, injury, or

24  harm whatsoever due to any conduct by Chase.  The remainder of Paragraph 82 states legal

25  conclusions to which no response is required.  To the extent that a response is required, Chase

26  denies the remaining allegations of Paragraph 82.

27  **83.    Pursuant to California Civil Code section 3333 Plaintiffs are entitled to damages**

28  **in the amount which will compensate for all the detriment proximately caused by Defendants.**

Chase denies that Plaintiff's action may be brought, or maintained, as a class action. Chase denies that any of the requirements for class certification have been, or will be, met in this case. Chase denies that Plaintiff or any putative class members have suffered any damages, injury, or harm whatsoever due to any conduct by Chase. The remainder of Paragraph 83 states legal conclusions to which no response is required. To the extent that a response is required, Chase denies the remaining allegations of Paragraph 83.

**84.     Chase acted recklessly, with oppression, and/or malice. Its conduct was in conscious disregard of Plaintiff's rights and done with the full knowledge that Chase's conduct would likely cause the loss of Plaintiff's home. Pursuant to California Civil Code section 3294, Plaintiffs are entitled to punitive damages in an amount to be determined at trial.**

Chase denies that Plaintiff's action may be brought, or maintained, as a class action. Chase denies that any of the requirements for class certification have been, or will be, met in this case. Chase denies that Plaintiff or any putative class members have suffered any damages, injury, or harm whatsoever due to any conduct by Chase. Chase denies that it has acted recklessly, with oppression, or with malice. The remainder of Paragraph 84 states legal conclusions to which no response is required. To the extent that a response is required, Chase denies the remaining allegations of Paragraph 84.

**Second Claim For Relief**
(Violations of California's Unfair Competition Law)

**(Business and Professions Code § 17200**
(Against All Defendants))

**85.     Plaintiff incorporates by reference the preceding paragraphs of this Complaint as though fully set forth herein.**

Chase reasserts and hereby incorporates by reference its responses to the preceding paragraphs of the First Amended Complaint above as though fully set forth herein.

**86.     Plaintiff brings this claim on her own behalf and on behalf of each member of the Solicitation Class, the Completed Trial Modification Class and the Communications Class described above.**

Chase denies that Plaintiff's action may be brought, or maintained, as a class action.  Chase denies that any of the requirements for class certification have been, or will be, met in this case. The remainder of Paragraph 86 states legal conclusions to which no response is required.  To the extent that a response is required, Chase denies each and every allegation in Paragraph 86.

**87.    California Business and Professions Code section 17200 ("Section 17200"), also known as the California Unfair Competition Law ("UCL"), prohibits acts of "unfair competition," including any "unlawful, unfair, fraudulent or deceptive business act or practice" as well as "unfair, deceptive, untrue or misleading advertising.**

Paragraph 87 states legal conclusions to which no response is required.  To the extent that a response is required, Chase denies each and every allegation in Paragraph 87.

**88.    Defendant's conduct was unlawful in that it violates California Civil Code Section 1714 and the common law of negligence.**

Paragraph 88 states legal conclusions to which no response is required.  To the extent that a response is required, Chase denies each and every allegation in Paragraph 88.

**89.    Defendant's conduct was unfair in that:**

**a.    By refusing to communicate at all Chase failed to properly inform Plaintiffs about their rights to assumption and modification options;**

**b.    Chase's conduct was also unfair in that it effectively treated the Plaintiffs as borrowers by collecting payments but arbitrarily denying them modifications thereafter; failing to provide accurate and consistent information about the loan to Plaintiffs when it knew or should have known the original borrower had died; failing to communicate with Plaintiffs in an accurate, consistent manner and by ultimately frustrating the purpose of the Garn-St. Germain Act, the California Civil Code, California's Homeowners Bill of Rights, and Federal Regulations requiring servicer to identify and communicate with successors¬in-interest after a death.**

c.      Chase conduct is unfair in that it solicited, accepted, processed applications for loan modification, extended trial plans, and/or accepted payments after default while Plaintiffs sought loss mitigation (including trial payments), inducing Plaintiffs to try to take advantage of Defendant's loss mitigation and modification processes, when Plaintiffs in fact never had a genuine opportunity to modify because Defendant failed to process Plaintiffs simultaneously for assumption and modification, and/or because Defendant's own policies would not permit it to modify.

d.      Chase's conduct was also unfair in that it accepted Plaintiffs' payments after default, and/or trial plan payments, but then denied them a genuine opportunity to modify or otherwise preserve their home.

Paragraph 89 states legal conclusions to which no response is required.  To the extent that a response is required, Chase denies each and every allegation in Paragraph 89.

**90.**     Defendant's conduct was fraudulent, that is likely to be misleading, in that it accepted payments from Plaintiffs as if their non-borrower status did not matter, offered Plaintiffs loan modifications, accepted loan modification payments and then ultimately refused to deal with Plaintiffs.  All of Chase's conduct reasonably lead Plaintiffs to believe they would be treated as any other borrower or allowed to benefit from loss mitigation when, in reality, Chase had no intention of doing so.

Paragraph 90 states legal conclusions to which no response is required.  To the extent that a response is required, Chase denies each and every allegation in Paragraph 90.

**91.**     As a direct and proximate result of defendants' unlawful, unfair and fraudulent business practices, Plaintiffs have been injured in fact and have lost money or property due to imposition of fees and other costs during the time Chase promised to review Plaintiffs for modification under HAMP or during the periods when Chase refused to deal with Plaintiffs at all, thereby increasing the amount required to cure or to reinstate their mortgage on their residence.

Chase denies that Plaintiff's action may be brought, or maintained, as a class action.  Chase denies that any of the requirements for class certification have been, or will be, met in this case.  Chase denies that Plaintiff or any putative class members have suffered any damages, injury, or harm whatsoever due to any conduct by Chase.  The remainder of Paragraph 91 states legal conclusions to which no response is required.  To the extent that a response is required, Chase denies the remaining allegations of Paragraph 91.

**92.     As a direct and proximate result of Defendants' unlawful and unfair business practices, defendants have been unjustly enriched and should be ordered to make restitution to Plaintiffs pursuant to Business and Professions Code sections 17203 and 17204.**

Paragraph 92 states legal conclusions to which no response is required.  To the extent that a response is required, Chase denies each and every allegation in Paragraph 92.

**93.     The unlawful, unfair and fraudulent business practices of Defendants described herein present a continuing threat to Plaintiff and will not cease doing so unless and until forced to do so by this Court.  Defendants' conduct is causing and will continue to cause irreparable plaintiffs and the class unless enjoined or restrained.**

Chase denies that Plaintiff's action may be brought, or maintained, as a class action.  Chase denies that any of the requirements for class certification have been, or will be, met in this case.  Chase denies that Plaintiff or any putative class members have or will suffer any damages, injury, or harm whatsoever due to any conduct by Chase.  The remainder of Paragraph 93 states legal conclusions to which no response is required.  To the extent that a response is required, Chase denies the remaining allegations of Paragraph 93.

**94.     Plaintiff seeks restitution and appropriate injunctive relief pursuant to Business and Professions Code section 17203, including but not limited to: an Order requiring Chase to communicate appropriately with Plaintiffs, and to communicate its policies relating to assumption and modification for successors in interest to the promptly and accurately; to treat Plaintiffs as borrowers for the purposes of loss mitigation, to evaluate them for modification or other foreclosure prevention alternatives as it would the borrower on the loan, and to offer them those alternatives for which they would qualify if they were the**

**borrower, whether by simultaneous assumption and modification or otherwise; and such**

**other and further relief as the Court may deem proper and just.**

Chase denies that Plaintiff's action may be brought, or maintained, as a class action.  Chase denies that any of the requirements for class certification have been, or will be, met in this case.  Chase denies that Plaintiff or any putative class members are entitled to any remedy whatsoever due to any conduct by Chase.  The remainder of Paragraph 94 states legal conclusions to which no response is required.  To the extent that a response is required, Chase denies the remaining allegations of Paragraph 94.

## PRAYER FOR RELIEF

Chase denies that Plaintiffs are entitled to any legal or equitable relief.

## AFFIRMATIVE DEFENSES

Chase sets forth the following affirmative defenses to Plaintiff's First Amended Complaint. Chase does not, by stating the matters set forth in these defenses, allege or admit that it has the burden of proof or the burden of persuasion with respect to any of these matters, and does not assume the burden of proof or persuasion as to any matters as to which Plaintiffs have the burden of proof or the burden of persuasion.

### First Affirmative Defense
(Conduct Sanctioned by Law)

As a defense to Plaintiff's First Amended Complaint and each and every allegation contained therein, Chase alleges that its actions were privileged or justified under applicable law, and that Plaintiff therefore should be barred from recovery.

### Second Affirmative Defense
(Fraud)

Plaintiff's claims are barred, in whole or in part, to the extent that she committed fraud or misrepresentations in connection with her modification paperwork.  Although discovery is still continuing, Plaintiff has already conceded that she provided false, inaccurate information material to the loan modification trial plan when she signed Berdine Sylvia's name using power of attorney over five years after Berdine Sylvia had died.

### Third Affirmative Defense
(Negligent Misrepresentation)

Plaintiff's claims are barred, in whole or in part, to the extent that she committed negligent misrepresentation in connection with her modification paperwork.  Although discovery is still continuing, Plaintiff has already conceded that she provided false, inaccurate information material to the loan modification trial plan when she signed Berdine Sylvia's name using power of attorney over five years after Berdine Sylvia had died.

### Fourth Affirmative Defense
(Federal Preemption)

Plaintiff failed to state facts sufficient to constitute a cause of action created by or recognized under any California statute, regulation or common law, to the extent that the state-law causes of action as alleged in the First Amended Complaint have been preempted in part or in whole by federal law.

### Fifth Affirmative Defense
(Primary/Exclusive Jurisdiction)

Plaintiff's claims are barred in whole or in part by the doctrines of primary and/or exclusive regulatory agency jurisdiction.  As Plaintiff has alleged, multiple federal regulatory agencies have provided guidance and promulgated regulations regarding much, if not all, of the alleged conduct that Plaintiff takes issue with in her First Amended Complaint.

### Sixth Affirmative Defense
(Abstention)

The court should abstain from taking jurisdiction over Plaintiff's claims under the doctrine of equitable abstention.  As Plaintiff has alleged, multiple federal regulatory agencies have provided guidance and promulgated regulations regarding much, if not all, of the alleged conduct that Plaintiff takes issue with in her First Amended Complaint.

**Seventh Affirmative Defense**
(Lack of Standing)

Plaintiff's claims are barred to the extent she lacks standing to sue for one or more of the claims in the First Amended Complaint, including but not limited to because Plaintiff has not suffered any injury-in-fact.

**Eighth Affirmative Defense**
(Equitable Defenses)

Plaintiff's claims are barred in whole or in part to the extent the doctrines of acquiescence, estoppel, laches, unclean hands, promissory estoppel, and/or waiver apply to Plaintiff.

**Ninth Affirmative Defense**
(Failure to Exhaust Administrative Remedies)

Plaintiff's claims are barred in whole or in part, to the extent Plaintiff failed to exhaust administrative remedies.

**Tenth Affirmative Defense**
(Comparative Fault)

Plaintiff's claims are barred in whole or in part, to the extent the purported damages and/or other injuries, if any, of which Plaintiff complains were directly and proximately caused by her own actions, including but not limited to her own negligence, fault, voluntary assumption of contractual obligations, and/or breach of contract.

**Eleventh Affirmative Defense**
(Constitutional Violations and Interference/Impairment of Contract)

A ruling in Plaintiff's favor would violate the California and United States  Constitutions, including but not limited to impermissibly impairing Chase's contractual obligations and rights under the Contracts Clause of each Constitution, U.S. Const. art. I § 10; Cal. Const., art. I, § 9.

**Twelfth Affirmative Defense**
(Contractual Right)

Plaintiff's claims are barred in whole or in part, because Chase contractually reserved the right to take the action(s) of which Plaintiff now complains.

**Thirteenth Affirmative Defense**
(Statute of Frauds/Parol Evidence Rule)

Plaintiff's claims are barred in whole or in part to the extent that the agreement that Plaintiff asserts to exist is either not documented in writing or is contravened by terms of Chase's written agreements with third parties.

**Fourteenth Affirmative Defense**
(Legitimate Business Justification/Good Faith)

Plaintiff's claims are barred in whole or in part, because Chase's conduct has at all times been undertaken with legitimate business justification and in a reasonable and good faith belief in the lawfulness of its actions.

**Fifteenth Affirmative Defense**
(Benefits Realized/Failure of Performance)

Plaintiff's claims are barred in whole or in part to the extent that  Plaintiff has received the full benefit of any monies paid to Chase and/or the obligations required to avoid default under the terms of the loan secured by real property located at 1209 Zinfandel Drive, Roseville, CA 95747 were not fulfilled.

**Sixteenth Affirmative Defense**
(No Proximate Cause)

Plaintiff's claims are barred, in whole or in part, because Chase has not engaged in any activity or conduct that is a proximate cause of any injury in fact, damages, or loss of money or property alleged by Plaintiff.

**Seventeenth Affirmative Defense**
(Superseding Causes)

Any and all harm caused to Plaintiff was the result of superseding or intervening causes arising from the acts or omissions of parties that Chase neither controlled nor had the legal right to control, and such alleged violations were not proximately or otherwise caused by any act, omission, or other conduct of Chase.

### Eighteenth Affirmative Defense
(No Intent to Deceive)

Plaintiff is precluded from recovery on her UCL-based claims because the representations and actions alleged by Plaintiff were not intended to deceive Plaintiff.

### Nineteenth Affirmative Defense
(Performance of Duties)

Chase has fully performed any and all contractual, statutory, and other duties, and Plaintiff is therefore estopped from asserting any cause of action against Chase.

### Twentieth Affirmative Defense
(No Basis For Injunctive Relief)

Injunctive relief is not appropriate for some or all of the allegations because, if Plaintiff is entitled to a remedy, which Chase denies, money damages would be an adequate remedy, and no threat of immediate harm exists sufficient to support a grant of injunctive relief.

### Twenty-First Affirmative Defense
(Not Maintainable As Class Action)

The First Amended Complaint fails to allege a proper class action, because, among other things, Plaintiff is not adequate representatives of the putative class; Plaintiff's claims are not typical of the claims of other members of the class; common issues of law and fact do not predominate over individual issues; the putative class is not manageable or ascertainable because of the variety of applicable state laws; and/or a class action is not superior to the other available methods for the fair and efficient adjudication of the purported claims for relief

### Twenty-Second Affirmative Defense
(Failure to Mitigate)

To the extent Plaintiff or any so-called class member claims he or she suffered any injury or damage, which Chase denies, his or her claims are barred in whole or in part, to the extent they failed to mitigate their damages, if any.

**Twenty-Third Affirmative Defense**
(Failure to Avoid Harm)

Plaintiff's claims under the Unfair Competition Law are barred in whole or in part, because, to the extent Plaintiff suffered any harm at all, which Chase denies, it was for Plaintiff's failure to avoid the harm.

**Twenty-Fourth Affirmative Defense**
(No Injury/Damages)

Plaintiff's claims are barred in whole or in part, to the extent Plaintiff has not suffered any cognizable injury or incurred any damages whatsoever in connection with the conduct alleged in the First Amended Complaint.

**Twenty-Fifth Affirmative Defense**
(Uncertain/Unmanageable Damages)

Plaintiff's claims are barred in whole or in part to the extent that the relief sought is based on harm or injury that is too speculative, uncertain, or for which there is no equitable or legal remedy.

**Twenty-Sixth Affirmative Defense**
(No Punitive or Statutory Damages)

Plaintiff cannot recover punitive and/or statutory damages for any of her claims, because they are not available for Plaintiff's claims and any alleged unlawful conduct was not knowing, willful or malicious.

**Twenty-Seventh Affirmative Defense**
(Unjust Enrichment)

Any award to Plaintiff in this action would constitute unjust enrichment. Plaintiff did not qualify for the loan to purchase the house in her own name and was not a party to any contract between Chase and Berdine Sylvia.

**Twenty-Eighth Affirmative Defense**
(Attorneys' Fees)

The First Amended Complaint fails to state facts sufficient to support Plaintiff's claim for attorneys' fees.

**Twenty-Ninth Affirmative Defense**
(No Duty)

Plaintiff's claims are barred, in whole or in part, because Chase does not owe Plaintiff, with whom Chase had no contractual relationship, any duty.

**Thirtieth Affirmative Defense**
(Failure to State a Claim)

Neither the First Amended Complaint as a whole nor any of its causes of action state facts sufficient to constitute a cause of action against Chase.

**Thirty-First Affirmative Defense**
(Statute of Limitations)

Plaintiff's claims are barred in whole or in part to the extent she filed her claims outside the applicable statutes of limitations, including but not limited to Cal. Code of Civ. Proc. §§ 335.1, 337, 338, 339, 343 and 360 and Cal. Civ. Code §§ ,1783, 1785.33 and 1788.30.

**Thirty-Second Affirmative Defense**
(Defenses To Claims of Absent Putative Class Members)

The claims of absent putative class members are barred to the extent the defenses asserted above apply to them.  In the event that any attempt is made to certify a class in this action, Chase reserves the right to identify and advance any further affirmative defenses that may then be appropriate.

**Thirty-Third Affirmative Defense**
(No Standing:  Cal. Bus. & Prof. Code §§ 17200 *et seq.*)

Plaintiff's Second Cause of Action is barred because Plaintiff has not suffered any actionable injury, loss of money or property, or other harm as a result of the alleged acts or omissions of Chase.  Therefore, Plaintiff lacks standing to sue under Cal. Bus. & Prof. Code §§ 17200 *et seq.*

### Thirty-Fourth Affirmative Defense
(No Violation of Cal. Bus. Prof. Code §§ 17200 *et seq.*)

Plaintiff's Second Cause of Action is barred because Chase has not engaged in an unfair, unlawful, or fraudulent business practice.

### Thirty-Fifth Affirmative Defense
(Plaintiff's Own Knowledge)

Plaintiff's claims are barred because Plaintiff knew, or  should have known, that she was not eligible to assume the loan secured by real property located at 1209 Zinfandel Drive, Roseville, CA 95747.

### Thirty-Seventh Affirmative Defense
(Reservation of Right to Assert Additional Defenses)

As a defense to any and all causes of action alleged, and to the First Amended Complaint in its entirety, at the time of the filing of this answer to the First Amended Complaint, affirmative defenses may not have been alleged for reasons that insufficient facts and information was available after reasonable inquiry before the close of discovery. Chase therefore reserves its right to amend this Answer to allege additional affirmative defenses based upon subsequent discovery of new or different facts or subsequent appreciation of currently known facts.

### PRAYER

WHEREFORE, Chase prays for judgment as follows:

WHEREFORE, Chase prays that the Court enter Judgment as follows:

1.     That the First Amended Complaint be dismissed with prejudice and that Plaintiffs take nothing thereby;

2.     That Judgment be entered on the First Amended Complaint in favor of Chase;

3.     That Chase be awarded its costs and reasonable attorneys' fees; and

4.     That Chase be awarded such other relief as the Court deems just, necessary, or proper.

1    Dated:  December 11, 2013                    ARNOLD & PORTER LLP

2                                         By:   /s/ Peter Obstler
                                               Peter Obstler
3                                              Marjory Gentry
                                               Attorneys for Defendant JPMORGAN
4                                              CHASE BANK, N.A.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ANSWER TO FIRST AMENDED COMPLAINT                2:13-cv-1099-KJM-EFB